SIROCCO ENGINEERING CO. v. B. F. STURTEVANT CO.

(Circuit Court of Appeals, Second Circuit. December 15, 1914.)

No. 31.

1. PATENTS ☞328—VALIDITY AND INFRINGEMENT—CENTRIFUGAL FAN.
    The Davidson reissue patents, No. 12,796 and No. 12,797 (original No. 662,395), for a centrifugal fan or pump, *held* void for anticipation by the Fournier & Cornu French patent, No. 254,064, of February 18, 1896; also *held* not infringed.

2. PATENTS ☞66—RIGHT TO PATENTS—PRIOR FOREIGN PATENT.
    That a foreign patent duly granted was permitted to lapse for nonpayment of the required annual fee, or was never printed, or that the device was not commercially successful, does not change its effect as an anticipation, which, under Rev. St. § 4886, as amended (Comp. St. 1913, § 9430), will defeat the right to a subsequent patent for the same device in the United States.

    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 79, 81; Dec. Dig. ☞66.]

Appeal from the District Court of the United States for the Southern District of New York.

On appeal from an interlocutory decree sustaining the validity of two reissued letters patent No. 12,796 (reissue A) and No. 12,797 (reissue B) granted May 26, 1908, to Samuel B. Davidson of Belfast, Ireland, for a centrifugal fan or pump. These patents were assigned to the Sirocco Company, complainant herein.

The original patent was granted November 27, 1900, on an application filed September 21, 1898. Attached to the description were 11 sheets of drawings containing 28 separate figures. No model was filed. The patent contained 17 claims. The reissue was applied for March 16, 1908, over 7 years from the date of the original, and the patents were reissued in 3 divisions containing 36 claims. Reissue C is not involved in the present controversy as it is conceded that it is not infringed.

The District Court sustained claims 1, 5, 7, 10 and 13 of reissue A and 1, 3, 4, 5, 10 and 14 of reissue B, and allowed the complainant three-fourths of the costs, charges and disbursements. The court ordered a perpetual injunc-

tion against the defendant and referred it to a master to take an account of the gains, profits and advantages derived by the defendant by reason of its infringement. Judge Ray's opinion is published in 208 Fed. 147. His opinion holding that it was not incumbent upon the trial judge to pronounce judgment upon claims which were not relied on by the complainant or discussed by either party is reported in 209 Fed. 624. The opinion of Judge Holt holding that the Sirocco Company was not a mere licensee of Davidson but was an assignee, and therefore entitled to reissue the patents, is reported in 184 Fed. 84. The opinion of Judge Noyes sustaining a demurrer to a bill on the reissued patents because of a delay of 7 years in applying for the reissue, but. permitting an amendment excusing the delay, is reported in 171 Fed. 440. The opinion of Judge Hough holding, after the amendment that the reissues were not so clearly void as to justify a decision dismissing the bill on demurrer is reported in 173 Fed. 378.

William H. Kenyon, of New York City, Benjamin Phillips and Alfred H. Hildreth, both of Boston, Mass., and Omri F. Hibbard, of New York City, for appellant.

Frederick P. Fish and Arthur C. Fraser, both of New York City, for appellee.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

COXE, Circuit Judge. The immense size of the record, the vast number of exhibits and illustrative models, the complex questions of mechanics and the six hundred and eleven pages of argument found in the briefs, where nothing, apparently, is conceded, combine to make this one of the most complex and annoying patent controversies which has come to the attention of the court. We shall endeavor, therefore, to localize the issue, as far as possible, and confine it to those references which approach nearest to the combinations of the Davidson patents. If any one of these shows the Davidson centrifugal fan or pump, it is not necessary to examine numerous other patents that may or may not show it. If, on the other hand, the nearest approach in the prior art does not show Davidson's fan, it is safe to assume that it will not be found in others more remote. In other words, the court should do what the members of the bar are usually reluctant to do, viz., limit the issue of patentability to a comparison of the patented structure with the few structures of the prior art which most nearly resemble it.

[1] Section 4886 of the Revised Statutes (Comp. St. 1913, § 9430) provides, inter alia, that one who has invented a new and useful machine not known or used by others in this country and not patented or described in any printed publication in this or any foreign country before his invention or discovery thereof may obtain a patent therefor. Broadly speaking, Davidson's fan consists, First: Of a rotary member having a plurality of elongated blades arranged lengthwise in an axial direction so as to inclose within them a relatively large and practically unobstructed intake chamber and receive and carry with them the air as they revolve and discharge it tangentially. Second: It consists of means for mounting the rotary member so as to permit the tangential escape of the air. The first claim of the reissue, which seems to be identical with the first claim of the original patent, sufficiently describes the invention for the purpose now under consideration. It is as follows:

"1. A centrifugal fan or pump, comprising a rotary member having numerous elongated blades arranged lengthwise in approximately axial direction, and in substantially drum form, so as to inclose within them a relatively large and practically-unobstructed intake-chamber, and in transverse section arranged, relatively to the axis and direction of rotation, to carry the fluid with them rotatively and discharge it tangentially, and a means for so mounting said rotary member as to permit the tangential escape of the fluid discharged from said blades."

The other claims are printed in the opinion of the District Court and need not be repeated here.

The claims are alike in using broad general language, and it will be observed that almost every element is limited or defined by some adjective or qualifying phrase. Little that is definite or certain is found in the claims. Take the first claim, previously quoted, as an example. The first element of the centrifugal fan as there stated is a rotary member having *numerous* elongated blades. Sixty would be numerous; so would 16, and any number between the two. They are to be arranged in an *approximately* axial direction and in *substantially* drum form so as to inclose within them a *relatively* large and *practically* unobstructed intake-chamber. In transverse section they are arranged, *relatively* to the axis and direction of rotation.

The other claims use the same and other qualifying adjectives, all designed to bring within their terms a wide range of equivalents.

But such indefinite language enables the defendant to invoke the rule that what infringes if made afterwards, anticipates if made before the alleged invention. Prior to Davidson's contribution to the art the idea of agitating air by a rapidly revolving wheel with a plurality of vanes or paddles attached to its spokes had been embodied in a number of structures. The patents which in our judgment most closely approach the Davidson fan are the British patent to Ser, 1884, and the French patents to Levet and Fournier & Cornu, issued, respectively, in 1890 and 1896.

Ser's patent is chiefly important in that it shows a steel plate or paddle wheel with a large number of blades. The drawing shows 32 inclined forwardly in the direction of their rotation. In the number, width and forward slant of the blades mounted in the usual snail-shaped casing, the Davidson idea is found, although embodied in a somewhat different machine.

The French patent to Levet was issued April 25, 1890, for a new fan having guides for the streams of fluid. The fan is inclosed in a snail-like shell having interior conduits for dividing the air and discharging it into the outlet tube. In the inlet of the case are guides for directing the entrance of the air. There are 48 blades in the Levet fan, all of them curved, in the direction of the rotation and alternating in width. The intake chamber is large, being about three-quarters of the total diameter of the wheel. The direction of the curvature of the blades varies according to the speed of the wheel, the inventor expressly stating that the blades are curved, "so that the component shall be in proportion to the speed of the wheel and of the air." It is true that Levet's is a double inlet fan, but it could require no inventive genius to split it in two or use one side only. In a similar way, it would

require no inventive genius to put two Davidson fans back to back and use them as a double fan.

We incline to the opinion that the best single reference cited by the defendant is the Fournier & Cornu patent No. 254,064 dated February 18, 1896. In this conclusion we, apparently, agree with the complainant, for it was this patent which induced the complainant to dismiss the suit on the original Davidson patent No. 662,395 and petition for a reissue in three divisions. In the amended bill the complainant avers:

"That your orator and said patentee were advised by their counsel that said foreign patent, considered in connection with the previous citations, constituted a prior art approaching so closely to the wording of certain of the claims of said letters patent as to render them void or of doubtful validity, and that said Letters patent were too broadly worded."

It further alleges that for these reasons the patent was reissued in three divisions, as previously stated. As this patent is commendably short and concise in its statements, it is here given in full:

"Specification annexed to the patent of fifteen years applied for the 18th of February, 1896, by Fournier & Cornu, represented by Marillier & Robelet, 42 Boulevard Bonne-Nouvelle, Paris, and which was granted to them by decree of the Minister of Commerce, Industry, Post and Telegraph on the 30th of May, 1896, for 'new system of ventilator called the rational.'

"This application for a patent has for its object to guarantee us the temporary exclusive ownership, in accordance with the law, of a new system of ventilator to which we have given the name of *the rational*. In order that its construction and operation may be fully understood, we shall hereinafter describe it with the aid of the figures of the drawings thereof annexed to this specification.

"Fig. 1 is a longitudinal exterior elevation.

"Fig. 2 is an exterior plan view according to Fig. 1.

"Fig. 3 is a longitudinal sectional elevation on line $X Y$, Fig. 2.

"Fig. 4 is a vertical section on line $X' Y'$, Fig. 3.

"This ventilator consists essentially of a wheel $A$ having curved iron blades $B$, and mounted centrally upon a disc shaped casting $C$. The blades $B$, whose width is equal to $14/100$ of the exterior diameter of the wheel $A$, are connected at their ends by two circular sheet metal bands $D$, $D'$, having an exterior diameter equal to that of the wheel $A$, and an interior diameter equal to $72/100$ of their exterior diameter.

"The disc shaped casting $C$ is splined upon the shaft $F$ of the wheel $A$. The total width of the paddle wheel may vary, but should equal at least two-thirds of the exterior diameter. The blades $B$ are in the shape of an arc of a circle, the tangent $G$ to a blade at the point $H$ where it meets the outer circumferences of the turbine and the tangent $G'$ of said circumference at the same point and directed in the direction of rotation intersect at an angle of 115 degrees.

"The wheel $A$ rotates in a casing $I$ which may be a casting or consist of iron, and the lateral walls of which are provided with circular openings, $J$, $J'$, whose centers are on the axis of the shaft $F$ of the wheel $A$ and whose diameter is equal to the diameter of the circle formed by the inner edge of the circular bands $D$, $D'$. The two openings constitute the suction orifice of the ventilator. A single exhaust opening is formed at $K$ in the cylindrical wall of the casing $I$, having a width equal to that of the interior of the casing, and a section less than the sum of the sections of both the suction openings $J$, $J'$.

"If it is desired to exhaust from a great distance, the suction openings $J$, $J'$, will each be provided with a tube communicating with a single passage ending at the supply pipes.

"The wheel $A$ turning with the desired speed, the blades $B$ throw out the

air between them and draw in the air contained in the middle portion $L$, which in turn draws in the air at the outside of the casing $I$ through the openings $J$, $J'$, said air thus entering naturally the central portion $L$ and passing through the spaces $M$ between the wings $B$, and out freely by the exhaust opening $K$.

"When it is desired to conduct the exhausted air to some distance, or to have a considerable water pressure shown by a manometer, a tube of gradually diminishing diameter is attached to the exhaust opening $K$. It will then be found that the smaller the outlet, the greater the pressure obtained.

"We have shown by experiment that the velocity of the air in leaving is substantially equal to the outer circumferential velocity of the turbine.

## "Résumé.

"We claim as our invention and as our exclusive property temporarily according to law, the system of ventilator called *the rational* above described and shown in one embodiment in the figures of the drawings annexed to the specification, reserving to ourselves the right to vary the shapes, dimensions, combinations and materials composing its different members; to apply it broadly and to make therein hereafter, all improvements which experience may suggest to us, provided that we do not depart from the essential spirit of our invention."

The drawings of this patent so closely resemble those of the patents in suit that to the casual observer the only important differences are in the number of the vanes, the manner in which they are mounted on the wheel and the manner in which the wheel is mounted on its axis. Unquestionably the patent shows a multivane fan having 16 blades on the wheel. The drawings of the patent in suit show more than this and the brief for the complainant asserts that there are 80 such blades, but the claims are not limited to any specific number and the complainant is seeking to hold structures having a much smaller number of blades.

We think that Fournier & Cornu blades are within the terms of the Davidson patents and claims. There is nothing in the specifications or claims limiting them to a particular number of blades or fixing definitely their length or breadth. Certain limits are fixed within which all subsequent fans will infringe and all prior fans will anticipate. We think the Fournier & Cornu fan is within these limits. Whether it incloses within its blades a relatively large and practically unobstructed intake chamber depends upon the question whether or not "the disc shaped casting $C$ splined upon the shaft" is such an obstruction. But the complainant will hardly contend for a ruling which, if sustained, might relieve the defendant from the charge of infringement. If the casting $C$ constitutes an obstruction, it is not easy to see why the spider arm contrivance of the defendant is not much more of an obstruction.

The Fournier & Cornu blades are in length about five times their radial depth and are within the language of the reissues in suit which require that the length of the blades shall approximate at least three times their radial depth. In other words, the length and depth of the Fournier & Cornu blades are well within the description of the Davidson blades. We cannot resist the conclusion that the Fournier and Cornu structure, in the construction of its paddle wheel, in the number, length, width and circular form of the blades and in the size and lo-

cation of the intake chamber, is within the claims of the reissues and, having been made before, anticipate those claims.

Compare it with claim 1 quoted above:

"A centrifugal fan or pump, comprising a rotary member having numerous elongated blades."

It has such a fan.

"Arranged lengthwise in approximately axial direction."

Its blades are so arranged.

"In substantially drum form."

It has such form.

"So as to inclose within them a relatively large and practically unobstructed intake-chamber."

It has such a chamber.

Blades "in transverse section arranged relatively to the axis and direction of rotation, to carry the fluid with them rotatively and discharge it tangentially."

It has such blades.

"A means for so mounting said rotary member as to permit the tangential escape of the fluid discharged from said blades."

It has such a means.

Though differing in many minor details, the Fournier & Cornu fan has the same object in view and operates upon the same general principle as the Davidson fan, having a large intake chamber and a fan of many vanes. As the catalogue of 1900 states:

"The width of the fan may, without any inconvenience, be equal to, or even greater than its diameter, the production of air varies according as its width is of greater or less dimension."

We quote the above not because we consider the catalogue which was published in France, as evidence, but because it is a concise statement of what seems to us a self-evident proposition.

The Davidson blades, as shown in the model, are narrower, in proportion to their length, than are the Fournier & Cornu blades, as shown, but the Fournier & Cornu patent states that the total width of the paddle wheel may vary but should equal at least two-thirds of the exterior diameter, so that the instruction of the patent may be followed and a Davidson fan produced.

[2] It is asserted and not disputed that under the French law an annual tax of 100 francs is necessary to keep a patent alive and that both the French patents lapsed by reason of the failure to pay such tax. It is also asserted, and not denied, that these patents were never published or printed, although certified copies of such patents may be procured from the French patent office. We are not at all sure as to complainant's position regarding these French patents. At pages 96, 97, of volume 1 of its brief, it recites in detail the facts above stated, relating to the proceedings in the French Patent Office, but we do not find that it deduces any definite conclusion therefrom further than that the patents "are entitled to no serious weight."

However, we are clearly of the opinion that we must consider these prior patents, irrespective of the fact that the tax was not paid. There can be no doubt that the Levet and Fournier & Cornu structures, in question, were *patented* in France. Nothing more is needed. That is all that the statute makes necessary; no patent can issue here for that which is *patented* in a foreign country, and it is patented there the moment it is sealed or enrolled. Ireson v. Pierce (C. C.) 39 Fed. 795.

It is not essential to a valid patent that the description and claims should be printed. It is enough that the officials have acted upon the application and granted the patent. We do not see how, in view of the statute and the decisions, we can ignore these French patents because they were not generally known and were not commercially successful. The law does not make these features essential in considering the structures of the prior art. As was said in New Departure Bell Co. v. Bevin Bros., 73 Fed. 469, at page 476, 19 C. C. A. 534, 540:

"It may be a hardship to meritorious inventors, who, at the expenditure of much time and thought, have hit upon some ingenious combination of mechanical devices, which for aught they know, is entirely novel, to find that, in some remote time and place, some one else, of whom they never heard, has published to the world, in a patent or a printed publication, a full description of the very combination over which they have been puzzling; but in such cases the act, none the less, refuses them a patent."

The question of infringement turns principally upon whether, or not the defendant's fan has "a practically unobstructed intake chamber," which is an element of each of the claims in issue. In other words, if the intake chamber is obstructed to any appreciable extent, it is not within the claims. What the patentee meant by "practically unobstructed" is made clear by the following from the original specification:

"The blades are extended approximately parallel to the axis of rotation being arranged in drum form, so as to inclose within them an approximately cylindrical intake-chamber which is practically unobstructed by blades or other parts."

These "other parts" are precisely what the defendant has placed in the intake chamber. It has a wheel centrally mounted on a large hub having a diameter apparently about four times the width of the blades, with six spokes made of angle iron extending from the hub and fastened to the center of the blades. In this respect the defendant's fan resembles closely the old paddle wheel fan. That such a device obstructs the intake chamber seems to be the opinion of the patentee himself, for in his British patent, accepted February 23, 1889, he claims a rotary fan—

"the vanes having no other support from the spindle than that given by the disc, so that a free and unobstructed passage for the air from the center of the fan to the vanes is provided."

We can think of but one rational interpretation of this language, viz., that if support be given to the vanes from the spindle by other means than the disc, the free passage of air from the center of the fan to the vanes will be obstructed. In other words, that spokes extending from the hub to the vanes are obstructions which prevent the

free and unobstructed passage of air. The spokes present quite a different situation from the one heretofore presented when considering the Fournier & Cornu smooth disc shaped casting. Here we have a wheel with six spokes revolving rapidly in the center of the chamber. It would seem that these spokes must necessarily cut, agitate and make cross currents in the inward flow of the air. To this extent, at least, the intake chamber is obstructed.

The decree is reversed with costs.