## SAFETY GAS LIGHTER CO. v. FISCHER BROS. & CORWIN.

(District Court, D. New Jersey. July 29, 1916.)

1. PATENTS ⟲⟹328—VALIDITY AND INFRINGEMENT—GAS IGNITER.

The Pomeroy patent, No. 1,011,643, for a gas igniter, conceding it to be not anticipated, and to disclose invention, is so limited by the prior art that it must be given a narrow construction, and, as so construed, *held* not infringed.

2. PATENTS ⟲⟹64—ANTICIPATION—"FOREIGN PATENT."

A German Gebrauchsmuster, although not printed. the title and a general description of the invention only being given in the official publication, is a "foreign patent," and as such available as a reference to anticipate or limit a later United States patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 79; Dec. Dig. ⟲⟹64.

For other definitions, see Words and and Phrases, Foreign Patent.]

3. PATENTS ⊕=69—ANTICIPATION—"DESCRIBED IN PRINTED PUBLICATION."
    The notice of such a patent, however, as printed in the Patent Blatt,
    is not such a description in a printed publication as will invalidate a later
    United States patent, under Rev. St. § 4886 (Comp. St. 1913, § 9430); but
    on the question of invention the description is in the prior art and charges
    a subsequent patentee with knowledge that a patent has been granted
    and of so much of the nature of the invention as the description discloses.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 84; Dec. Dig.
    ⊕=69.  For other definitions, see Words and Phrases, First and Second
    Series, Describe.]

4. PATENTS ⊕=328—INVENTION—GAS IGNITER.
    The Gould patent, No. 1,021,363, for a gas igniter, held void for lack
    of invention, in view of the prior art.

In Equity.  Suit by the Safety Gas Lighter Company against Fischer
Bros. & Corwin.  On final hearing.  Decree for defendant.

Louis H. Harriman and William Quinby, both of Boston, Mass.,
for plaintiff.

James Hamilton, of New York City, for defendant.

HAIGHT, District Judge.  The plaintiff is the owner of patent
No. 1,011,643, issued to it as assignee of Frederick H. Pomeroy on
December 12, 1911, and patent No. 1,021,363, issued to Matchless
Lighter Company, as assignee of Joseph B. Gould on March 26,
1912, and subsequently assigned to the plaintiff.  Both patents relate
to hand-operated devices for igniting gas.  The defendant is engaged
in the manufacture and sale of such a device, which, it is claimed,
infringes claims 1, 2, 3, 9, 10, 11, and 12 of the Pomeroy patent, and
claims 2, 3, and 5 of the Gould patent.

The devices of the patents in suit, as well as that of the defendant,
differ only in minor details of construction.  In principle they are
the same.  Some time prior to the summer of 1903 Baron von Wels-
bach, a celebrated Austrian chemist, discovered a metallic alloy, con-
sisting of cerium and iron, which upon abrasion will give forth a
shower of sparks capable of igniting gas.  He applied for, and there
were issued to him, patents thereon in Austria, France, and this
country.  The French patent was published on April 4, 1904; the
Austrian on February 25, 1905; and on November 27, 1906, the
United States patent was issued.  The devices of each of the patents
in suit were designed to utilize that metal for the purpose before
mentioned.  Each of them, as well as that of the defendant, consists,
broadly speaking, of a contrivance to be held in the hand, made in
the form of tongs, one arm of which carries Welsbach's pyrophoric
alloy, and the other a file; the arms being so arranged that by
pressing the two together with the fingers of the hand the alloy is
brought into frictional engagement with the file, and as it is moved
along the surface thereof gives off the sparks.  They are designed
to be held over a gas jet, and when operated will ignite the escaping
gas.

The following cuts show the devices of the patents in suit, defend-
ant's igniter, and that of the first Pomeroy patent:

Igniter of Pomeroy's Patent No. 940,276.

The device is simple, and no doubt has proved very useful, especially in lighting gas stoves, as it does away with the necessity for matches, as well as the danger incident to their use. During a number of years preceding Welsbach's discovery, many contrivances were devised and patented in this and other countries, whose object was to eliminate the use of matches in lighting gas, cigars, etc., as well as devices which, while using matches as igniting means, sought to effect the ignition thereof automatically. The prior art exhibits a number of devices wherein an electric spark, flint, etc., were used. It was to be expected, therefore, as was the case, that as soon as Welsbach's discovery was made generally known many devices for utilizing it for the purposes before mentioned would be evolved.

[1] The Pomeroy patent in suit was not applied for until February 18, 1910, although the same inventor had applied on November 19, 1908, and there had been issued to him on November 16, 1909, a patent (No. 940,276) for a gas lighter in which the Welsbach alloy was used, but which, structurally, was quite different than that of the later patent. The Gould patent was applied for on May 14, 1910. The dates of the applications for the patents are, of course, prima facie the dates of invention, respectively, of the devices therein described. It was established, however, by a stipulation filed in the case, that lighters hereinafter referred to as the "Blitz," and which were of the same general design, utilized the same alloy, and operated on the same principle as those of the patents in suit, were imported from Germany into and placed on sale in this country as early as November 1, 1909. The plaintiff then deemed it necessary, as it undoubtedly was, if it was to succeed in this suit, to show that the inventions of its patents were made prior to that date.

It is claimed that the Pomeroy invention was conceived and reduced to practice in the month of March, 1908, and the Gould invention "not earlier than the summer and not later than the fall of 1909." Whether or not it is the rule that the plaintiff must establish that the date of the inventions were prior to the time when the Blitz lighter was placed on sale in this country, "beyond a reasonable doubt," as some cases hold Thayer v. Hart, 20 Fed. 693 (C. C. S. D. N. Y.), I think it has failed to prove by evidence "strong and convincing," or "to the satisfaction of the court" (Hunnicutt Co. v. Gaston Co., 218 Fed. 176, 134 C. C. A. 56 [C. C. A. 3d Cir.]; Clark Thread Co. v. Willimantic Co., 140 U. S. 481, 492, 11 Sup. Ct. 846, 35 L. Ed. 521), that Gould's invention, at least as to the form described in the patent, was made prior to April 15, 1910. Although the inventor of the Pomeroy device and his father claim that the lighter, described and illustrated in the Pomeroy patent in suit, was finished in the early part of March, 1908, and the plaintiff has produced the original, and although a number of witnesses swear that a similar, if not the same, lighter was exhibited to them by the father of the inventor as early as March, 1908, the evidence by no means satisfies me that this or any other such lighter had been constructed by Pomeroy at that time, or in fact before the latter part of September, 1908, at the earliest. It, admittedly, was not even conceived until after

the elder Pomeroy had read an article in the Scientific American about the Welsbach alloy, and had sent abroad for a sample thereof, and had received the same. The article in question appeared in the issue of February 8, 1908.

The elder Pomeroy's story is that he read this article at a public library about the time that it came out; that his son, the inventor, was then at work on an electric gas lighter; that the thought occurred to him that the alloy might be useful for making a gas lighter, as, indeed, the article indicated it would be; that he wrote Welsbach, who was mentioned in the article as the person who had made the discovery, at Treibach, Austria, where the article stated the alloy was made, for a sample; that shortly thereafter he received such a sample and exhibited it to his son, who experimented with it, and, within a few days thereafter, built the device of the Pomeroy patent in suit. He further states that shortly thereafter he exhibited the device so made to a number of people in the city in which he lived, a majority of whom, I think, were called to corroborate him. After he had testified, the defendant introduced in evidence a letter which the elder Pomeroy wrote on April 15, 1908, to the writer of the Scientific American article, a Mr. Gilbert, in which he referred to the article and asked that he be advised of the address of the maker of the metal, or be informed as to where he could get a "sample" of it. There was also produced another letter, written by him on June 1, 1908, to the Treibacher Chemische Werke, of Treibach, Austria, the manufacturer of the metal, inclosing a dollar, and asking that there be sent to him by mail "a sample of best grade of pyrophoric metal for lighting gas." A copy of the money order which was inclosed in this letter was also produced. On September 26, 1908, he wrote the same concern, advising it that the sample of the metal had just been received, and stating that he did not understand the cause of the long delay. In the same letter he ordered $5 worth of the metal.

The elder Pomeroy was recalled to explain the apparent contradiction of his testimony which these letters made, but his explanation is disingenuous and unconvincing. He claims that the quantity of metal which he received on the order of February seemed to indicate that the price was very high, and that he then determined to communicate with the writer of the Scientific American article, with the idea of finding out whether he had ordered it from the proper concern. Yet he testified that the sample which he first received came from the Treibacher Chemische Werke, the same concern to which he wrote on June 1st for a sample. If he had already received a sample from that concern, it is inconceivable why he should write for another. In the letter to Gilbert he expresses a desire to procure "a sample of the metal." Nor did he in that letter state that he had written to Welsbach, and had received a sample of the metal, and that he was uncertain as to whether he had ordered it from the proper person, or something similar, as would be expected. Nor is there any record of a money order having been sent by him in February or March, 1908. In addition, one of the persons connected

with the Treibacher concern testified that the first shipment to Pomeroy was that which he acknowledged in his letter of September 26th. Pomeroy further testified that, when the first piece of metal arrived, the fact that he had sent for it had escaped his mind. This is entirely reasonable, if the time which elapsed between the order and the receipt is considered to be that from June 1st to the 26th of September, but absolutely unreasonable if he received it so soon after reading the article of February 8th as to have enabled his son to conceive and complete the device of his first patent by the 1st of March.

Further, one of the witnesses called to corroborate him testified that he saw the device for the first time "in the fall of the year." All of the witnesses testified several years after the event, and although each gave some reason why he was able to fix the time, none of such reasons can be said to be such as would definitely fix a date in one's mind, and many of them would be quite as applicable to one year as another. The records of the Haverhill Fire Department, which were introduced to show the date of a fire, which it was claimed by some of the witnesses enabled them to fix the date when they first saw the lighter, prove, I think, that the circumstance of the fire could not have been an accurate means of fixing the date when they saw the lighter, for one of them, who relies upon that circumstance, testified that it was not more than a week after the fire that the lighter was shown to him. The records show that the fire occurred on February 11, 1908, only three days after the article appeared in the Scientific American. Manifestly Pomeroy could not even have received the metal, even if his story as to the time when he sent for it was correct, at the time this witness' recollection, based on the episode of the fire, is that he saw the completed device. Of course, as the testimony of the witnesses whom plaintiff produced to fix the date when they first saw the device of the patent is proven to be incorrect in that respect, doubt is cast upon all of their testimony, as it is likewise, and to a greater degree, upon the testimony of the Pomeroys.

I do not feel at liberty, however, to absolutely disregard the testimony of such a number of witnesses, when I have not had the benefit of seeing them or hearing them testify, and when I can readily understand that, in their zeal to assist their friend Pomeroy, they may have innocently misstated the date, and at the same time have really seen the device of the patent at some later time. Unquestionably Pomeroy conceived the idea of making a gas lighter to use the Welsbach metal, and constructed one or more specimens, some time between the 26th of September, 1908, and the 19th of November of the same year, when he filed the application for his first patent. It would be natural for the elder Pomeroy to exhibit to his friends the first specimen of a lighter rather than a subsequent one. I think, therefore, that I must find that between those dates he conceived the lighter described in the first patent in suit, and that it was exhibited to those witnesses shortly after it was made. It then becomes necessary to consider the prior art in respect to the Pomeroy patent as the same existed before Sep-

tember 26, 1908, and as respects the Gould patent before April 15, 1910.

As before mentioned, lighters of various kinds had been made and patented before the Welsbach metal was discovered. The Welsbach patents and the articles subsequently written about the metal described therein pointed out that it would produce sparks which would ignite gas, and thus one of the uses to which it could be put. The problem, therefore, before any one who wished to utilize the metal for lighting purposes, was merely the form of the device in which to use it. Therein only, if at all, was the field for invention. Even the use of a file to produce the sparks had been revealed. It was to be expected, of course, that the devices would differ according to the number of persons interested in designing them. One of the earliest of such devices is described in a German patent (No. 177,951) issued to Pintsch on September 17, 1905, and published on November 9, 1906. This was in form a hand lighter, in which the alloy was brought in frictional engagement with an abrader by means of a hand-operated plunger partly controlled by a spring. Another is that described in the French patent, No. 361,519, issued to Lux on May 29, 1906, and published on July 29, 1906. This was an attachment to be affixed to a gas lamp and manually operated. Still another is shown in the French patent granted to d'Ysarn & Bonnassies on April 8, 1908 (No. 386,314). This was similar in form to the Pintsch device. On April 14, 1908, there was issued to Fillunger a German Gebrauchsmuster (336,878) for a lighter of the tongs type, wherein the arms were pivotally connected together at one end and normally held apart by means of a spring; one arm, bent almost at right angles, carried the abrader, which was in the form of a file, and the other the pyrophoric alloy, as in both of the patents in suit. The sparks were made by pressing the arms together and thus forcing the alloy over the abrader. The alloy was held yieldingly against the abrader by means of a spring in the container in which the alloy was inserted. On April 16, 1908, there was issued to Fillunger another Gebrauchsmuster for another form of lighter employing the Welsbach alloy, which differed from the former only in that shears were used instead of tongs. On May 6, 1908, there was published in the German Patentblatt a notice of the registration of the first Gebrauchsmuster patent as follows:

"Ignition device for gas burners, consisting of two tongs-like movable arms which carry, respectively, an abrading surface and a pyrophoric metal pressed against the same."

On the same date there was likewise published a notice of the registration of the other patent, identical in form, except that it was said to consist "of two shears-like movable arms."

[2] It is contended by the plaintiff, on the authority of Steiner v. Schwarz, 148 Fed. 868 (C. C. S. D. N. Y.), that a German Gebrauchsmuster is not a patent, within the meaning of section 4886 of the Revised Statutes (Comp. St. 1913, § 9430), and hence that the two Gebrauchsmusters before referred to have no effect on this case. Although it is with extreme hesitation that I venture to express a view contrary to that entertained by so distinguished a jurist as Judge

236 F.—61

Holt, I am unable, in view of the evidence in this case and in the light of the recent decision of the Circuit Court of Appeals of the Second Circuit in Sirocco Engineering Co. v. Sturtevant Co., 220 Fed. 137, 143, 136 C. C. A. 91, to concur in his view. In the latter case it was held that all that the statute requires is that the device be *patented* in a foreign country, that it is patented there the moment it is sealed or enrolled, that whether or not it is printed is immaterial, and that it is enough that the officials have acted upon the application and granted the patent. It would also seem to be immaterial in what form it is issued, providing the specifications and drawings are accessible to the public. See Ireson v. Pierce, 39 Fed. 795, 798 (C. C. D. Mass.) and Elizabeth v. Pavement Co., 97 U. S. 126, 131, 24 L. Ed. 1000.

The rights conferred on an inventor by a German Gebrauchsmuster, except as to time, seem to be quite as extensive as those guaranteed by a patent in this country. Its grant is the act of the government. Although only the title is published, in the sense that it is printed in an official publication, the specifications and drawings of the patent are open and accessible to the public, as are also the claims, which measure the scope of the protection afforded to the inventor, as soon as the title, date of application, and registration are published in the Patentblatt. As it is not essential that a foreign patent, to have the effect mentioned in section 4886 of the Revised Statutes, should be printed, but that the act of the officials in granting it and accessibility of its disclosures to the public are the decisive factors, I am at a loss to understand how the fact that only a title is printed, or how the scope of the invention which it protects, or that the examination made in the Patent Office before it is granted is limited, can have any effect on it under our laws. If these patents are considered, as I think they should be, as in the prior art, the Pomeroy patent in suit, if not anticipated by them, or void for lack of invention over them, must be given such a narrow construction that I think the defendant's device does not infringe. In this connection it should be borne in mind that neither the plaintiff nor the defendant makes and sells the form of device described in either the Pomeroy or Gould patents, but each has adopted the form of a lighter subsequently imported from Germany.

[3] But the defendant contends that, even if the Gebrauchsmusters cannot be considered in the prior art, the notice thereof published in the Patentblatt on May 4, 1908, is sufficient to negative novelty in both of the patents in suit. I think, however, that the description in that publication did not "contain a substantial representation of the invention of the patent in suit in such full, clear, and exact terms as to enable any person skilled in the art or science to which it appertains to practice the invention of the patent in suit without the necessity of making experiments," and hence the publication does not have the effect contended for. Hanifen v. Godshalk, 84 Fed. 649, 28 C. C. A. 507 (C. C. A. 3d Cir.); Ward Baking Co. v. Weber Bros., 230 Fed. 142, 147, 144 C. C. A. 440 (D. C. N. J., affirmed C. C. A. 3d Cir.). But on the question of invention this description, such as it is, was in the prior art, and Pomeroy was charged thereby with notice that there had been devised gas-lighting devices consisting of two tongs-like mov-

able arms and shears-like movable arms carrying respectively an abrading surface and a pyrophoric metal pressed against the same. Being charged with knowledge of that description, and by the Scientific American article, as well as the Welsbach patents, with knowledge that sparks would be emitted when the metal was scratched with a file, and the tongs construction shown in the Wright patent (No. 666,618), designed to light by an electric spark, and the Hartley patent (No. 875,348), the question arises at once, irrespective of the Gebrauchsmusters, did it involve invention to conceive and design the device of the patent? If it did, I have also no doubt that the invention was of such a narrow scope, and hence that the claims in suit must be given such a correspondingly narrow construction, as will relieve the defendant's device from infringement. I am constrained to find, therefore, that even if the claims in suit of the Pomeroy patent can be held to be valid, the device of the defendant does not infringe them.

[4] In view of the fact that the Gould patent is later than the Pomeroy patent in suit, and in view, also, of the fact that Fillunger was granted a patent in Austria (No. 36,627) for the two devices covered by the Gebrauchsmuster patents beforementioned, which antedates what I have found to be the date of Gould's invention, and the fact that the Blitz igniter was on sale in this country also before Gould's invention, it follows that the field of invention at the time Gould conceived the device of his patent was narrower than that which existed when the first Pomeroy device was designed. The only novelty exhibited by that patent over the prior art is the bending over and doubling back of one of the arms to act as a holder for the file, as well as a stop for the arms, and the method of holding the file. It is inconceivable that these very slight differences would not occur to any ordinary mechanic, and that they are not the natural changes which were to be expected in the development of such a simple contrivance as this. To hold that these changes constitute invention would, I think, violate settled principles. The Gould patent is also clearly anticipated by the form of device referred to in the testimony as the "Squeeze-It," and which the evidence would seem to indicate was for sale in this country in January, 1910.

It follows, therefore, that the bill must be dismissed, with costs.