## BARBER v. OTIS MOTOR SALES CO.

(District Court, N. D. New York. May 22, 1920.)

1. Patents ⬩66—Foreign anticipations must have become patents or publications before invention and two years before application.

Under Rev. St. § 4886, as amended (Comp. St. § 9430), foreign patents to be available to defeat a United States patent for the same invention, must have become patents or printed publications in foreign countries before the date of the United States invention, or more than two years before the application for the United States patent was filed.

2. Patents ⬩66—British and French patents date as anticipations from enrollment; "printed publications."

British and French patents do not become "patents," or "printed publications," within the meaning of the patent statutes, until the enrollment or sealing of the complete specifications, so that they cannot defeat a United States patent, unless enrolled before the invention or two years before the application.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Patent; First Series, Printed Publication.]

3. Patents ⬩66—Evidence held to show invention antedated foreign patents.

Evidence by the inventor and others, showing drawings, patterns, and an experimental machine involving the invention, held to show invention before the date of enrollment of foreign patents, which were enrolled less than two years before the application for United States patent.

4. Patents ⬩60—Against anticipation, inventor may show date of invention by competent proof.

Where defendant makes no rival claim to priority of invention, but relies on the statutory defense of anticipation, the patentee may show, if he can, the fact of his prior invention by drawings, sketches, models, or any other competent proofs.

In Equity. Suit to restrain infringement of patent by William Barber against the Otis Motor Sales Company. Decree ordered for plaintiff.

See, also, 247 Fed. 553.

This is an action in equity to restrain alleged infringement of United States letters patent No. 781,802, dated February 7, 1905, for "valves and valve gear for explosive engines," and which patent was applied for February 24, 1902. The case originally came on for final hearing on pleadings and proof on November 18, 1915, and this court, after consideration of the proofs and of the prior art, reached the conclusion that the Barber patent was valid and infringed by the defendant. 231 Fed. 755. On appeal to the United States Circuit Court of Appeals for the Second Circuit the conclusions of this court were affirmed, and a petition for rehearing denied. 240 Fed. 723, 729, 153 C. C. A. 521. Thereafter accounting proceedings were inaugurated under the decree and the mandate of the Court of Appeals. Subsequently the Barber

patent here in suit came before Judge Hazel in the case of Barber v. Reo Motor Car Sales Co., in the District Court for the Southern District of New York, upon additional prior art patents, which were not before and were not considered by this court in its original consideration of this suit. Judge Hazel reached the conclusion that the Barber patent must be limited by the new prior art set up, and when so limited was not infringed by the defendant. 245 Fed. 938. Thereafter motion was made for the court to request the recall of the mandate of the Court of Appeals, in order that jurisdiction might be restored to this court to hear and consider a motion to suspend the accounting and a rehearing or retrial of this case on the new prior art patents set up before and considered by Judge Hazel in Barber v. Reo Motor Car Sales Co. These motions were granted, and the mandate of the Circuit Court of Appeals has been recalled. The case now comes before this court for final determination on proofs submitted by both parties, based on the alleged new prior art patents referred to.

Fred F. Weiss, of New York City (Samuel E. Darby, of New York City, of counsel), for plaintiff.

Wetmore & Jenner, of New York City (Robt. D. Eggleston, Lawrence E. Sexton, and Harry G. Kimball, all of New York City, of counsel), for defendant.

RAY, District Judge (after stating the facts as above). The Barber patent, No. 781,802, has been before this court repeatedly in various litigations, and after most careful study of the numerous prior art patents, presented to the court in the various litigations to which said patent has been subjected, it has successfully withstood the attacks made upon its validity. The structure which the Barber patent shows and describes, the invention which it defines in claims 8 and 9 thereof, these being the claims here involved, the problem which this invention successfully and satisfactorily solves, and the conclusions reached after a careful and painstaking examination and study of the prior art patents heretofore set up against it, in this case and in other cases in which the patent is involved, are fully set forth in the opinions of this court (231 Fed. 755) and of the Circuit Court of Appeals (240 Fed. 723, 153 C. C. A. 521), and they need not be repeated here. For present purposes it is sufficient to say that on the original hearing in this case this court held:

"The evidence shows and it is well known that the valves of motor engines frequently get out of order and require cleaning and repairs of various kinds. A construction which is safe and of reasonable cost, and which will enable the owner to remove and replace these valves speedily and cheaply and without injury to the motor engine, is therefore of great value. Here was the problem which confronted Mr. Barber, the inventor in this case, and the evidence shows that he solved the problem satisfactorily, and that his invention went into use, and that this defendant and others have appropriated it, to his damage and, injury. Mr. Barber has not been guilty of any laches in endeavoring to enforce his rights. He is not a man of wealth, but this is no reason why courts should not give him the same consideration they would give wealthy men or wealthy corporations. I find and hold that the structure of the patentee discloses patentable invention in view of the prior art and that there is no anticipation.

"The defendant placed in evidence more than 20 different patents, but no one of them shows the combination of Mr. Barber, and no one of them shows a combination of elements which solves the problem presented to Mr. Barber, and which he successfully solved. There is no one element in the combination of Mr. Barber which is absolutely or entirely new; but he has a new combi-

nation and a useful combination of old elements, and the making of this combination discloses patentable invention of a high order. His invention has been availed of by others, and several have taken a license under his patent, while others are boldly infringing. The defendant in this case struggled vainly to show a combination in any prior patent which solves the problem presented to this complainant. The defendant presented patents which disclose one or more of the elements found in the Barber patent, but it has been held again and again that a new and useful combination of old elements which results in a new structure of utility, and which the ordinary mechanic skilled in the art would not have produced, constitutes patentable invention."

Again, at page 761 of 231 Fed.:

"It is vain to search the prior art for a construction and combination like this. Each and every patent in evidence, which shows a valve cage, or a screw plug, or a combination of both, has one or more obstructions to a removal of these parts, which interfere with the removal of the valves. Various of these patents show that efforts had been made in the direction of securing a quick removal of the valves, but no one had fully solved the problem until Barber came into the field. In a sense and to an extent, at least, he is a pioneer. In but one or two of the prior patents is any reference made to the problem which Barber sought to solve."

The Circuit Court of Appeals, after quoting the last paragraph above quoted from the opinion of this court, said at page 726 of 240 Fed. (153 C. C. A. 524):

"It will serve no good purpose for this court to traverse step by step the ground which the District Judge has very carefully gone over in his opinion. It must suffice to say that our examination of the patent and of the patents of the prior art fails to convince us that any mistake was made by the District Judge in sustaining the validity of this patent."

On this retrial, however, additional patents alleged to be in the prior art, and which have not been specifically presented to this court before, are set up, and proofs have been presented by both parties with respect thereto. Of the new patents alleged to be of the prior art now set up in this case the Hirsch United States patent, No. 532,555, and the Carling British patent, No. 110 of 1891, may be dismissed from consideration, for the reason that these patents are not directed towards the problem of providing for the quick, easy, and convenient removal of the valves, which is the problem with which the Barber patent in suit deals, but are directed toward a different object and purpose. This is also the view of Judge Hazel in connection with the Hirsch patent. The Fessard United States patent, No. 639,160, may likewise be eliminated for the same reason. Moreover, the valve of this patent is of the flanged type. It was the purpose of the Barber invention to avoid the use of that type of valve and the difficulties incident to such use. This is also the view taken by Judge Hazel with regard to the Otto engine valve cage device.

[1] This leaves for consideration the British patents to Bousfield, No. 5,230 of 1899; to Hall, No. 4,191 of 1899; and to Jerram, No. 3,720 of 1900; and the French patent to Wohlgrath, No. 296,244 of 1900. These foreign patents can be availed of to defeat the Barber patent, assuming that they are for the same invention as that claimed in the Barber patent, only in case they become patents or printed publications in the foreign countries before the date Barber made the in-

vention of his patent, or more than two years before Barber filed the application for his patent. The wording of the statute (section 4886, R. S., 29 Stat. 692 [Comp. St. § 9430]) is:

"Any person who has invented or discovered any new and useful art, machine, * * * not patented or described in any printed publication in this or any foreign country, before his invention or discovery thereof, or more than two years prior to his application * * *"

—may obtain a patent. It is necessary, therefore, in the present case, to ascertain the dates when the Bousfield, Hall, Jerram, and Wohlgrath patents became "patents," or "printed publications," within the meaning of the statute, and then to ascertain whether or not these respective dates, or any one of them, was prior to the date when Barber made his invention, or was more than two years prior to the date on which Barber made application for his patent. The Barber application was filed February 24, 1902. Did any of these foreign patents become a "patent," or a "printed publication," earlier than February 24, 1902?

[2] The evidence shows that the Bousfield British patent was applied for March 9, 1899, the application was accepted January 20, 1900, and the patent was sealed or enrolled *April 3, 1900*. The Hall British patent was applied for February 25, 1899, the application was accepted February 24, 1900, and the patent was sealed or enrolled *May 8, 1900*. The Jerram British patent was applied for February 26, 1900, the application was accepted March 31, 1900, and the patent was sealed or enrolled *June 12, 1900*. The Wohlgrath French patent was applied for January 17, 1900, and was granted *May 3, 1900*. It has been repeatedly held that British and French patents do not become "patents," nor "printed publications," within the meaning of the patent statutes of this country, until the enrollment or sealing of the complete specifications. Ireson v. Pierce (C. C.) 39 Fed. 795, 798; American Roll-Paper Co. v. Weston (C. C.) 45 Fed. 686, 691; Sirocco Engineering Co. v. Sturtevant, 220 Fed. 137, 136 C. C. A. 91; Electrical Accumulator Co. v. Julien Electric Co. (C. C.) 38 Fed. 117, 141; Bliss v. Merrill (C. C.) 33 Fed. 39, 40; Walker on Patents (5th Ed.) § 55, p. 69. It is thus clear that the foreign patents did not become patents or foreign publications more than two years prior to the date on which Barber filed his application for the patent in suit.

A Swiss patent to Wohlgrath, No. 20,387, and a book by Beaumont on "Motor Vehicles and Motors," pages 285 and 291, have also been considered in this connection. No proof has been offered as to the date when the Swiss patent was sealed, nor as to the date when the Beaumont book was published. This book bears the imprint of "1900" as the date of its publication, and the printed "preface" purports to be dated "March, 1900." Obviously these dates are too late.

[3] Did the British and French patents become patents, or publications, within the meaning of the statute, before the date Barber made his invention? Evidence has been offered by Barber to establish the date he made his invention and of the various steps taken by him in the development, by the making of sketches and drawings, patterns, castings, and the assembling of the parts into a complete working en-

gine. The testimony of Barber is to the effect that he made the invention of his patent, and made drawings of his engine in all its details, in the fall of 1897, fixing the time he worked on his drawings by reference to the date his wife gave birth to a child. Barber testifies that in the fall of 1899 he made wooden patterns of various parts of his engine, including the parts of the valve structure embodying the invention of his patent, and some of the wooden patents of the valve assembly parts made at that time were preserved and are produced in evidence. Barber testifies that as the patterns were completed he employed them in producing castings, and that the various castings and parts were machined and assembled into an engine, which was set up in his shop and successfully and practically operated experimentally in the winter of 1899–1900, and subsequently he built other engines of the same structure, all containing the claimed invention of his patent. This testimony is fully corroborated by Mrs. Barber, by Burtchell, the pattern maker, who assisted in making the wooden patterns, by Higginson, the iron molder, who made the castings, by Beake, the machinist, who assisted in the work of machining and assembling the parts of the engine, and by Johnson, who visited Barber's shop in the winter of 1899–1900 and saw the engine in operation. All of these witnesses gave their testimony in open court and under the personal observation of the court, and I am satisfied from their bearing and manner on the witness stand that they testified truthfully, and their testimony carries conviction as to the matters concerning which they have testified. They all agree that the Barber engine, embodying and containing the claimed invention of the Barber patent, was completed and successfully operated, experimentally, at least, as early as February or March, 1900.

[4] The earliest date which can be accorded to the foreign patents set up to defeat the Barber patent is April 3, 1900, which is the sealing date of the Bousfield British patent. But to defeat the Barber patent, under the patent statutes of this country, it is necessary for the defendant to show a foreign patent or a printed publication which became a patent or a publication before Barber made his invention or discovery. This is the statutory requirement, and under the authorities the defendant has failed to show this. Loom Co. v. Higgins, 105 U. S. 580, 592 (26 L. Ed. 1177, 1182); Von Schmidt v. Bowers, 80 Fed. 121, 140, 25 C. C. A. 323; Philadelphia & Trenton Railroad Co. v. Stimpson, 14 Pet. 461, 462 (10 L. Ed. 535). The issue is not one of priority as between rival claimants. The defendant does not assert or set up any rival claim to priority of the Barber invention. On the contrary, the question is the statutory one whether Barber made his invention before the available dates of the foreign patents. Miner v. Symington, 229 Fed. 730. And it is well settled that, as against the statutory defense of anticipation, the patentee may show, if he can, the fact of his prior invention by drawings, sketches, models, or by any other competent proofs. Von Schmidt v. Bowers, supra; Loom v. Higgins, supra; Bates v. Coe, 98 U. S. 34, 25 L. Ed. 68; Smith v. Vulcanite, 93 U. S. 486, 23 L. Ed. 952; Apparatus Co. v. Woerle (C. C.) 29 Fed. 451.

Having reached the conclusion that the alleged new prior art patents set up by defendant to defeat the Barber patent are too late in date, under the statute and the authorities, to operate as anticipations, it becomes unnecessary to consider or to discuss the disclosures of said patents. I may say, however, after a careful study of them, I am persuaded that they fail as anticipations, or even as materially or substantially limiting the scope of the Barber patent, and I am all the more constrained to this view by the fact that the defendant does not employ the structures of these foreign patents, but instead have chosen to take the Barber structure. I do not deem it necessary, however, to base my disposition of the controversy on this ground.

For the foregoing considerations, I am of the opinion that the decree should be awarded the plaintiff, with costs, and the accounting proceedings resumed.