## WARDEN v. CITY OF ST. LOUIS, MO.

### No. 12727.

Circuit Court of Appeals, Eighth Circuit.

Feb. 14, 1944.

Rehearing Denied March 7, 1944.

Harold Olsen, of Chicago, Ill. (Orr, Pflager & Foulis, of St. Louis, Mo., on the brief), for appellant.

Lawrence C. Kingsland, of St. Louis, Mo. (Joseph F. Holland, James V. Frank, Edmund C. Rogers, and Kingsland, Rogers & Ezell, all of St. Louis, Mo., on the brief), for appellee.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

SANBORN, Circuit Judge.

Henry I. Warden, the patentee of United States Letters Patent No. 1,955,569, which were applied for June 15, 1931, and issued April 17, 1934, sued the City of St. Louis for infringement of Claim 3 of the patent. The defenses were invalidity and noninfringement. The District Court found Claim 3 to be invalid, and entered a decree for the City, from which this appeal is, taken. Warden asserts that the finding of the District Court that the claim is invalid is clearly erroneous.

Claim 3 of the patent in suit reads as follows: "A license tag for a motor vehicle, comprising a frangible film, provided with identifying serial numerals, and adapted to be secured to a glass part of the motor vehicle against removal without destruction."

The patent is entitled, "Licensing of Motor Vehicles." It relates to a license plate or tag, for automobiles, in the form of a decalcomania or sticker adapted to be affixed to the inner face of the windshield, and of such a frangible nature that it cannot be removed without destruction or without leaving permanent evidence of its removal. The objects of the alleged invention are to provide a form of license plate which cannot readily be stolen and to prevent the use of stolen or lost license plates.

The application for the patent was rejected by the Patent Office on the ground that the subject matter was not patentable in view of the art of record. Warden then filed a bill in equity against the Commissioner of Patents, pursuant to 35 U.S.C.A. § 63, and procured an adjudication that he was entitled to have the patent issue with the claims which now appear therein.

When Warden made his alleged invention, he was living in Chicago, and was engaged in the plumbing business. For about ten years prior to 1931, that City had been issuing metal license discs to evidence the payment of the annual City tax on automobiles. These discs were about five inches in diameter and were adapted to be bolted to a corner of the State license plate car-

ried by the automobile. The discs could be removed without difficulty, and this gave rise to a theft and fraud problem resulting in annoyance and expense to those whose discs were stolen and in loss of revenue to the City.

The problem of theft and unlawful transfer of the license discs in Chicago was a serious one. The officers whose duty it was to collect the tax on automobiles were aware of the problem and were trying to solve it, but had failed to arrive at a satisfactory solution. The City was required to replace lost or stolen discs with duplicates on payment of a small charge. In each of the years 1921 to 1931, the number of duplicates furnished was about four per cent of the total number of original discs issued. Prosecutions by the City growing out of the stealing of discs were an everyday occurrence.

In 1931, Warden, within a short period of time, had three sets of license discs stolen from his car. Each time, he was obliged to go to the Chicago City Hall, stand in line, make application for a duplicate, and pay a small fee. After his third experience and while on his way home, he thought there ought to be some way to prevent this sort of thing, and conceived "the idea of a decalcomania or sticker on the windshield which would not be removable without destruction, which would prevent the theft of these plates." Warden communicated his idea to the Deputy Collector of Chicago. An ordinance was passed putting the idea into effect. The City sent to the record owners of the original metal discs the new form of nonremovable stickers to be pasted on the windshields of their cars, and instituted a police drive to compel owners of cars without stickers to pay the tax and secure licenses. The first month after Chicago had put into effect this new system of licensing, more than 25,000 additional applications for City licenses were received, producing approximately $250,000 of additional revenue for the City. Since the adoption by the City of Chicago of Warden's plan of licensing automobiles, the number of duplicates issued has become negligible, as have also prosecutions for the theft of license tags.

Warden filed suit against the City of Chicago for infringement of his patent in 1936. In 1937 he brought an infringement suit against the American Decalcomania Company, which had furnished the accused tags to the City of Chicago. The latter suit resulted in a consent decree that the patent was valid and was infringed. The alleged infringer took a license. An infringement suit brought by Warden against Kansas City, Missouri, was also terminated by a consent decree in 1939, when the manufacturer of the accused devices took a license. Other decalcomania manufacturers also took licenses from Warden. At the time of the trial of the instant case, about 150 villages and cities were using Warden's alleged invention.

The appellee, City of St. Louis, is an unlicensed user of a decalcomania license tag or sticker. While there is a controversy over whether the sticker used by the City of St. Louis is frangible and nonremovable within the meaning of Claim 3 of the patent in suit, it is apparent that the City has substantially adopted Warden's plan for licensing automobiles.

The prior patented art shown by the record consists mainly of a number of earlier patents upon decalcomanias, which show that decalcomanias were old in the art long prior to Warden, and this is conceded. In addition, the record contains the prior art patents considered by the Patent Office, namely the patent to Jaschun No. 1,689,140 for a folding license plate to be attached to a windshield and removed by the owner when the car is not in operation, and the patent to Hulsebos No. 1,707,723 for a metal windshield tag with the license number of the car displayed upon it. The Hulsebos tag is to be cemented to the inside of the windshield in such a way that the removal of the tag will destroy the license number and render the tag useless. The tag is also provided with a pocket containing a "key member" for removal when the car is not in operation. The key member is, in effect, a small duplicate tag.

The record shows that the use of paper stickers on windshields was old. In fact, Warden, at the time he conceived his idea, had a sticker on his car which he concedes may have influenced him. The State of New York since 1925 and the State of Illinois since 1927 had issued gummed paper certificates to be attached to the windshields of taxicabs and omnibuses to show that the owners had complied with state requirements relative to liability insurance.

Among the interrogatories submitted by the appellee to Warden prior to the trial, were the following:

"State whether or not it will be contended at the trial hereof that plaintiff was the first to employ a decalcomania on an automobile glass where the same did not have thereon any serial number.

"State whether or not it will be contended at the trial hereof that plaintiff was the first to employ a decalcomania on a glass having a serial number thereon, apart from its use on an automobile."

His answer to each was "No". While the language of the interrogatories is somewhat ambiguous, it is apparent that Warden meant by his answers that he was not contending that he was the first to use on the windshield of an automobile a decalcomania without a serial number or the first to use on glass, other than the glass of an automobile, a decalcomania with a serial number.

In our view of this case, it is unnecessary to analyze the prior art in detail. Decalcomanias, both with and without numbers on them, were old; frangible films were old; the conception that a nonremovable license tag attached to the inside of a windshield would prevent theft was old; and paper stickers for use on windshields were old.

What Warden discovered was that a license tag or sticker consisting of a decalcomania or other frangible film attached to the windshield of an automobile was an economical and effective method of preventing the theft and unlawful transfer of automobile licenses. The discovery was a meritorious one, met with commercial success, and solved a long existing problem. The simplicity of the device which solved the problem should not militate against patentability if, in fact, invention was involved.

■ It is our understanding that, in any art, the field open to invention lies beyond the boundaries of what is known to the art and what is discoverable through the application of the mechanical skill of those familiar with the art. The discovery that what is old may advantageously be put to a new use is ordinarily not invention. The monopoly of the first inventor of a patented device extends to all of the uses—whether known or unknown to him—for which it is adapted or for which it can be used. Roberts v. Ryer, 91 U.S. 150, 157, 23 L.Ed. 267; National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 8 Cir., 106 F. 693, 709, and cases cited. It must necessarily follow that when that monopoly ceases, the invention, for any and all purposes for which it is adapted, becomes public property and can be used by any one. See and compare Frederick R. Stearns & Co. v. Russell, 6 Cir., 85 F. 218, 226, 227; Ford Motor Co. v. Parks & Bohne, Inc., 8 Cir., 21 F.2d 943, 950.

■ An outstanding illustration of the rule that the discovery of a new use or a new function for an old device does not constitute patentable invention, notwithstanding the merit and success of the discovery, is found in the cases holding invalid the patent granted to Caesar for the Tropic-Aire heater for automobiles. Tropic-Aire, Inc. v. Sears, Roebuck & Co., 8 Cir., 44 F.2d 580, affirming D.C., 44 F.2d 577, certiorari denied 282 U.S. 904, 51 S.Ct. 217, 75 L.Ed. 796; Tropic-Aire, Inc. v. Wildermuth, 2 Cir., 64 F.2d 342, certiorari denied 290 U.S. 653, 54 S.Ct. 69, 78 L.Ed. 566; Tropic-Aire, Inc. v. Cullen-Thompson Motor Co., 10 Cir., 107 F.2d 671. Caesar was the first to devise a satisfactory automobile heater, but what he did was to discover and point out that a known type of space heater was admirably adapted for the heating of automobiles. In the instant case, Warden pointed out that a known type of frangible film would function well as a nonremovable license tag for automobiles. His discovery was of a new use or new function for a known device, which, for all purposes, had become public property and was available to all. Moreover, in view of what was known in 1931 about the use of paper stickers upon the windshields of automobiles, it would not have been invention to discover that a frangible paper automobile license sticker would solve the problem caused by the theft of automobile license tags. The conception that a frangible film license sticker would more adequately serve the purpose than a paper one, could not, we think, reasonably be regarded as the product of inventive genius.

It is our conclusion that, under the evidence and the applicable law, the finding of the District Court that Claim 3 of the patent in suit is invalid is not erroneous.

The decree appealed from is affirmed.