**TRICO PRODUCTS CORPORATION v. DELMAN CORPORATION.**

**TRICO PRODUCTS CORPORATION v. McGINN et ux.**

**Civ. Nos. 863, 882.**

United States District Court
S. D. Iowa, Central Division.

As Amended May 11, 1949.

Edwin T. Bean, Buffalo, N. Y., and M. K. Hobbs, Chicago Ill., Talbert Dick, Des Moines, Iowa, for plaintiff.

Charles F. Meroni (of the firm Charles W. Hills), Chicago, Ill., and Rudolph L. Lowell, Des Moines, Iowa, for defendants.

DEWEY, District Judge.

The questions presented in the two above actions, which were consolidated for trial, have the usual issues of validity of patents, infringement, and added thereto, the question of whether the plaintiff has violated the anti-trust laws of the Congress.

The actions were tried upon their merits at Des Moines, Iowa, from the 15th to the 19th day of March, 1949, were submitted and, by agreement, the parties have argued the questions in writing and the case has been finally submitted.

The patents declared upon are those of A. W. Becker, No. 1,949,098, and of E. C. Horton, No. 2,206,814. The attorneys have ably and exhaustively treated every phase of the questions presented.

Plaintiff claims its patents disclose new and important advancements in the art of cleaning windshields of automobiles from dirt and accumulations that interfere with the vision of the driver.

While the patent claims are very narrow in their advancement of that art, still it is apparent that both Horton and Becker made some changes and additions to known combinations and the defendants' attempts to evade the broad claims of the patents are subterfuges and with little merit. If the patents are valid, the infringement by the defendants is apparent—the Delman corporation direct and the defendants Mc-Ginns contributory.

Defendants' main claim for noninfringement is that the plaintiff's claims were limited by the Patent Office and accepted by the plaintiff, or its assignors, to a localized flow of liquid on the windshield. That their device does not thus localize the flow of liquid upon the windshield but spreads and deploys the liquid over the entire surface of the windshield and beyond the arc made by a windshield wiper.

It may be that the stream of liquid from defendants' device is not localized solely to the arc of the windshield wiper, but it is also apparent that at least a part of its flow is so localized. Its very purpose is to place the liquid so it can be spread by the windshield wiper.

The patents declared upon are for combinations of old and very well-known elements, and the purpose and object to be attained apparently suggested the use of combinations easily procured and assembled.

Section 31, Title 35 U.S.C.A., provides as follows: "Any person who has invented or discovered any new and useful art, machine, manufacture, or composition of matter, or any new and useful improvements thereof * * * may * * * obtain a patent therefor."

Plaintiff has been for sometime in the business of manufacturing and selling automobile accessories, and the management was farsighted enough to preceive a demand for a windshield cleaning device to relieve motorists in wet weather from an impairment of vision when mud and slush were splashed upon the windshield. They evidently discovered the patent rights of A. W. Becker and purchased from him his patent which they hoped would be a basic or prime patent covering the subject. However, they knew it was too crude to satisfy the commercial requirements of the traveling public, so they directed their engineer, Mr. E. C. Horton, to get up a combination that would meet the demand.

The purpose was to get liquids in sufficient amounts and at proper places to enable the windshield wiper to clear the glass when obscured by foreign substances. Mr. Horton at that time was chief engineer of the Trico Products Corporation and had been its engineer since 1922. He testified that he produced devices for the company which were patented and that when so patented they became the property of the plaintiff company. It would appear from his evidence that, given the problem desired to be solved, drawings were first made by Mr. C. J. Allaart, who was the designing and experimental draftsman of the plaintiff company. After the drawings were made, the chief engineer set up in his shop a department to work on the problem and kept a work sheet of the time and men employed and the expense required. They did develop a windshield cleaner that has since attained remarkable sales success, but whether that success was on account of the design as thus prepared and used for sale by the plaintiff company or because of the public demand for such a product is speculative.

The device, good and suitable as it developed, is the work of a skilled engineer and mechanic, working at his trade.

Mr. Horton, in his testimony at the trial taken by deposition, says that the three elements which he considered an advancement of any art at that time were: "First, the use of hydrostatic pressure to forcibly throw a stream into the path of the wiper on to the glass; second, the location of the nozzle at a point where the direction of the stream would be substantially in the direction of the air flow surrounding a moving automobile; third, the introduction of a predetermined time or amount of squirt so that it would clear itself, turn itself off automatically and thereby relieve the driver of all attention except that of setting the device into motion."

No particular means of supplying the necessary power is claimed. And, as far as power is concerned in the art, the Becker patent suggests that power could be used; and the Italian patent, No. 321,596, shows not only the nozzle on the outside and at the base of the windshield, but squirting water upward into the path of the windshield wiper.

Plaintiff claims this Italian patent had to be actually published prior to Horton to be effective, but I am not impressed with that argument.

The British patent, No. 241,381, issued October 22, 1925, clearly discloses the placing of the liquid at locations on the windshield as desired; and the McKee patent, No. 1,702,877, also shows the liquid to be deposited, independently of the wiper, positioned to discharge the liquid in the path of the windshield wiper.

Mr. Horton's second claim of the location of the nozzle at a place where the stream would be substantially in the direction of the air flow, it seems to me, is more the claim of a result than a claim of an element of a combination. The nozzle of necessity had to be located at the bottom of the windshield, as the wipers are now so located, and it would be a very foolish thing to try and squirt liquids in the path of the windshield wiper from the top of the windshield instead of at the bottom.

The third claim of the introduction of a predetermined time or amount of the squirt is very old in the art. It is even disclosed in Becker's patent where the manipulation of a valve released liquid in the path of the windshield wiper in such amounts as the operator cared to release and at any time.

Even if we eliminate the British patent to Rawlinson, No. 430,366, it still cannot help but be noticed that he solved practically the same problem as did Horton and in about the same way and at about the same time; and the same can be said about the Italian patent.

This Horton patent comes in the class of those combinations which are the result of an idea by the superintendent of an organization to supply an anticipated advancement in the art. The works of Mr. Horton, as mechanical engineer for the plaintiff company, taking into consideration his skill and knowledge of mechanics generally, comprise nothing more than ordinary mechanical skill and at most are devoid of inventive genius and do not comprise any new and useful art, machine, manufacture, or composition of matter.

The Becker patent, No. 1,949,098, is even less entitled to respect as a "flash of genius" than is the Horton claim. In its last analysis, it consists of a tank on the top of the windshield with an independent supply pipe and so arranged that its contents can be deposited at the will of the operator, and in any amount, in the path of the windshield wiper by opening a valve. And for this Becker claims: "17. A clearing fluid distributing device for windshields comprising a reservoir, means for mounting the same, a flexible pipeline connected to said reservoir, a terminal tube provided with a body connected to said pipeline and a relatively laterally directed delivery portion independent of a wiper, and means for positioning said delivery portion adjacent to a wiper when connected to said pipeline to deliver fluid from said reservoir on a windshield in the path of said wiper."

It would appear to be a pretentious claim for a tank, a supply pipe and a valve.

Becker's advancements in the art, if any, are therefore minor and contain no other elements other than those found in an ordinary atomizer, which has the supply tank, an independent tube and a bulb, which is an equivalent of the valve, as far as its functional duty is concerned.

Becker claims he discovered his combination before McKee, but it is difficult to see why, if this were true, he did not file claims on this discovery instead of the claims he did file which were turned down by the examiner in the Patent Office.

Here again, if we eliminate McKee, No. 1,702,877, it is noticeable that he solved the same problem as did Becker and in about the same way and at the same time.

[1] Defendants' claim that the plaintiff has violated the anti-trust laws is based upon the evidence that the plaintiff recommends and sells to the trade a windshield wiper housing with a hole at its base put there for the purpose of placing therein the nozzle of plaintiff's device. However, there is no claim or showing that the plaintiff company is requiring the purchase of this windshield wiper housing with the sale of its patented combination, and I know of no practice that would violate the anti-trust laws where the seller insists that the use of a separate article would enhance the ease with which its equipment could be installed. I therefore find that the defendants' counter-claim should be dismissed upon its merits.

The attorneys have, at the request of the court, prepared and submitted findings of fact and conclusions of law, and the same are adopted insofar as they comply with the foregoing opinion, as follows:

Findings of Fact.

1. This is a suit for patent infringement under the United States Patent Laws involving only claims, 1, 3, 5, 6, 16 17 and 24 of the Becker Patent No. 1,949,098, and claims 9, 13 and 14 of Horton Patent No. 2,206,814, owned by the plaintiff; and includes a counterclaim brought by the defendants under the anti-trust laws against the plaintiff for mis-use of such patents and unfair trade practice.

2. Neither Becker nor Horton, patentees of the patents in suit, originated the ideas of spraying windshields with liquid and of removing liquid from the path of vision by a wiper, although the claims in suit are directed to a combination of such elements.

3. Becker, in the prosecution of his application for patent, acquiesced in the Patent Office rejection on the prior art of his claims directed to the combination of a windshield wiper and means for supplying liquid to the windshield, and then limited his combination claims in suit to a localizing of the liquid.

4. Defendant, The Delman Corporation, makes and sells automobile windshield washers embodying some of the claims of the patents in suit. The Delman washers are sold under the name Mo-Par to the accessory division of the Chrysler Corporation and under the name of Ford See-Clear to the accessory division of the Ford Motor Company. The Delman Corporation also sells or transfers a certain number of its devices to the defendants, McGinn.

5. The defendants, Mr. and Mrs. J. Paul McGinn, secure automobile windshield washer devices made by and from the defendant, Delman Corporation, and make demonstration units which are then sold or transferred to Chrysler and Ford dealers for the sole purpose of encouraging the sale of the Delman made automobile windshield washers.

6. Horton patent, No. 2,206,814, does not show any substantial advancement in the art, but is a combination made up of old elements which are more or less anticipated by prior patents and disclosures and does not show or comprise invention, and neither does it show discovery of a new or useful art, machine, manufacture, or composition of matter.

7. Horton patent, No. 2,206,814, is the result of ordinary mechanical skill.

8. Becker patent, No. 1,949,098, does not show any substantial advancement in the art, but is a combination made up of old elements which are more or less anticipated by prior patents and disclosures and does not show or comprise invention, and neither does it show discovery of a new or useful art, machine, manufacture, or composition of matter.

9. Becker patent, No. 1,949,098, is likewise a product of ordinary mechanical skill.

And as Conclusions of Law the Court finds:

1. The court has jurisdiction of the parties and of the subject matter of these actions.

2. United States Letters Patent No. 1,949,098 is invalid in law as to claims 1, 3, 5, 6, 16, 17 and 24, in that it comprises ordinary mechanical skill and is devoid of invention or new discovery.

3. United States Letters Patent No. 2,206,814 is invalid in law as to claims 9, 13 and 14 in that it comprises ordinary mechanical skill and is devoid of invention or new discovery.

4. The counterclaim filed by the defendants herein is not supported by the evidence and should be dismissed on its merits.

The Court therefore enters the following order:

The above-entitled actions came on for hearing and were tried in open court at Des Moines, Iowa, on their merits, and being advised, the Court finds that the claims in issue of the patents declared upon are invalid and that the claims of the defendants as against the plaintiff in their counterclaim are without merit.

It is therefore Ordered that plaintiff's petitions and the counterclaim of the defendants be, and they are, hereby dismissed

upon their merits, and with judgment against the plaintiff for costs. All parties except.