## TRICO PRODUCTS CORPORATION v. DELMAN CORPORATION et al.

## DELMAN CORPORATION et al. v. TRICO PRODUCTS CORPORATION.

### Nos. 14021, 14022.

United States Court of Appeals
Eighth Circuit.

March 8, 1950.

Edwin T. Bean, Buffalo, N. Y. (Bean, Brooks, Buckley & Bean, Buffalo, N. Y. and Talbert Dick, Des Moines, Iowa, were with him on the brief), for Trico Products Corporation.

Charles F. Meroni, Chicago, Ill. (Rudolph L. Lowell, Des Moines, Iowa, was with him on the brief), for The Delman Corporation and for J. Paul McGinn and Mrs. J. Paul (Mary Helen) McGinn, copartners, doing business as Eldora Mill & Manufacturing Company.

Before SANBORN, THOMAS, and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

The important question for decision in these cases is whether the determination by the District Court that claims 1, 3, 5, 6, 16 17 and 24 of United States Letters Patent No. 1,949,098 issued to Albert W. Becker on February 27, 1934, for a "Windshield Clearing Device," upon an application filed February 6, 1928, and claims 9, 13 and 14 of United States Letters Patent No. 2,206,814, issued to Erwin C. Horton on July 2,

530

1940, for a "Windshield Clearing System," upon an application filed August 12, 1935, are void for want of invention, is clearly erroneous.

The Trico Products Corporation, which owns both of these patents and which makes and sells windshield wipers and windshield washers, brought an action against The Delman Corporation and an action against J. Paul McGinn and Mrs. J. Paul (Mary Helen) McGinn, co-partners, doing business as Eldora Mill & Manufacturing Company, for infringement of the patents. The defenses interposed were anticipation, want of invention, indefiniteness of claims, fraud in the procurement of the patents, and unclean hands. The actions, which involved the same issues and the same devices, were consolidated. Thereafter the defendants filed a counterclaim for treble damages and asked for an accounting, asserting that the plaintiff had misused its patents in violation of the federal anti-trust laws.

The issues were tried to the District Court without a jury. At the opening of the trial, counsel for the plaintiff stated that as to the Becker Patent the plaintiff would rely upon claims 1, 3, 5, 6, 16, 17 and 24, and as to the Horton Patent it would rely upon claims 9, 13 and 14. The District Court determined that, under the evidence and the applicable law, while infringement was apparent if the claims in suit were valid, they were not valid, because the subject matter of the claims involved neither invention nor discovery but only mechanical skill. The court dismissed the plaintiff's complaints. It also dismissed the defendants' counterclaim for treble damages, on the ground that the evidence in support of it was insufficient to show that the plaintiff had misused its patents. 85 F. Supp. 393. This appeal and cross-appeal followed.

The plaintiff contends, in effect, that it was entitled to an adjudication that the patents in suit were valid and infringed, upon the ground that the evidence would support no other conclusion. The defendants assert that the court should have (1) found non-infringement of the plaintiff's patents, (2) adjudged the plaintiff guilty of a misuse of

its patents and sustained the defendants' counterclaim, and (3) determined that all claims of each of the patents in suit were invalid.

■ It is apparent that if the District Court was justified in finding that the claims upon which the plaintiff relied were void for want of invention, it is unnecessary for this Court to consider the question of infringement. We agree with the District Court that the evidence in support of the defendants' claim that the plaintiff had misused its patents was insufficient to sustain that claim. Compare, Falkenberg v. Bernard Edward Co., 7 Cir., 175 F.2d 427, 431. We are also of the opinion that the District Court correctly limited its findings and judgment to the patent claims which were relied upon by the plaintiff, although we regard that question as largely academic.

The only question in the cases which we think merits serious consideration is that of the sufficiency of the evidence to support the findings that the claims in suit of both patents are void for want of invention.

What the patents involve are improved means or devices for discharging a suitable fluid in the path of windshield wipers of motor vehicles, to assist in keeping the windshields free from ice, snow, dirt, insects, etc., while the vehicles are in operation. The general idea was concededly old prior to Becker and Horton.

■ The question whether an improvement involves merely mechanical skill or the exercise of the faculty of invention is a question of fact, and a finding either way upon that question by a trial court is, under Rule 52(a) of the Federal Rules of Civil Procedure for the United States District Courts, 28 U.S.C.A., conclusive on appeal unless clearly erroneous. Thomson Spot Welder Co. v. Ford Motor Co., 265 U.S. 445, 446, 44 S.Ct. 533, 68 L.Ed. 1098; Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co., 336 U.S. 271, 274-275, 279, 69 S.Ct. 535; Hall Laboratories, Inc. v. Economics Laboratory, Inc., 8 Cir., 169 F.2d 65, 66-67, and cases cited.

Becker's solution of the problem of discharging liquid into the path of the wind-

shield wiper of a motor vehicle was to use a combination consisting of a cylindrical reservoir, a tube or pipe connected therewith, and a shut-off valve at the outlet of the reservoir. The reservoir was attached to the inside of the body of the motor vehicle above the windshield, with the shut-off valve within reach of the driver. The tube from the tank ran along the top of the windshield for a short distance on the inside and thence through an aperture to the outside. The tube was then led back on the outside of the windshield near the top to a point just above the pathway of the windshield wiper, where the liquid from the reservoir would, when the shut-off valve was opened, run down into the pathway of the wiper.

Claim 1 of the Becker Patent reads as follows: '1. In combination, a windshield, a windshield wiper thereon, and means including a supply line independent of the wiper for delivering a localized supply of clearing fluid on the windshield for flow thereon intersecting the path of the wiper and distribution by the latter."

It seems to us that what Becker did was to point out how a combination of a tank, a valve and a tube could be arranged to furnish a gravity flow of liquid into the pathway of a windshield wiper for the purpose of assisting the wiper to clean or clear the windshield. It was common knowledge, however, long before Becker, that liquid could be piped from a tank to any spot below the level of the tank where the liquid was wanted, and that if a valve was placed in the outlet from the tank the flow of liquid could be turned on or shut off at will. Examples of this are the old tank street sprinklers, the tank trucks for delivery of oil and gasoline, the tanks of windmills and the like, and flush toilets. The application of an old device to a new use is not invention. Mallon v. William C. Gregg & Co., 8 Cir., 137 F. 68, 76; Tropic-Aire, Inc. v. Sears, Roebuck & Co., 8 Cir., 44 F.2d 580, 588-591, certiorari denied 282 U.S. 904, 51 S.Ct. 217, 75 L.Ed. 796; H. D. Hudson Mfg. Co. v. Standard Oil Co., 8 Cir., 60 F.2d 377, 379; Warden v. City of St. Louis, Mo., 8 Cir., 140 F.2d 615, 617. Nor is it invention to produce a

device which a skilled mechanic would produce when required to effectuate a given result. Frank Adam Electric Co. v. Colt's Patent Fire Arms Mfg. Co., 8 Cir., 148 F.2d 497, 502, and cases cited. It seems inconceivable to us that, either before or after Becker's alleged invention, anyone could be prevented from installing in a motor vehicle such a combination as Becker disclosed and claimed in his patent. In any event, we are convinced that the District Court committed no error in finding that the claims in suit of the Becker patent were void for want of invention.

Horton's solution of the problem of injecting cleaning liquid into the path of a windshield wiper was, as a practical matter, far superior to Becker's device, which had obvious defects, the principal one of which was that on a slanting windshield of a moving motor vehicle the opposing air currents would almost invariably overcome any gravity flow of the liquid. It is apparent that Becker was dealing with vertical windshields (with wipers pivoted at the top of the windshields) of vehicles moving at slow speeds, while Horton was dealing with slanting windshields (with wipers pivoted at the bottom) of vehicles moving at relatively high speeds. The modification of the Horton device which the plaintiff makes and sells is meritorious and has met with great commercial success, more than three million having been sold up to the time of the trial of these cases.

Claim 9 of the Horton Patent is typical, and reads as follows: "9. In a motor vehicle construction having a windshield and an underlying body portion extending forwardly therefrom and provided with a nozzle receiving opening a nozzle supported by the body portion in the opening thereof and directed upwardly for discharging a stream of liquid onto the windshield, a reservoir mounted beneath the body portion for containing a supply of the liquid, pump means connected for delivering a substantially predetermined volume of liquid from the reservoir to the nozzle, and one way means interposed in the fluid communication between the nozzle and the reservoir and automatically acting to hold the liquid in the upwardly directed nozzle against re-

turn to the reservoir when the pump means are inactive."

Stated briefly and generally, what Horton did was to provide a reservoir for the cleaning fluid below the hood of the motor vehicle, from which reservoir a pump, located below the dash in the interior of the vehicle, would draw a charge of the liquid when the operator pulled a handle attached to the plunger of the pump. Upon release of the handle, the pressure of a spring would force the plunger to its original position, meanwhile expelling the charge of liquid through a tube connected with jets or nozzles located on the cowl of the car, adjacent to the bottom of the windshield, thus discharging the liquid into the path of the windshield wiper. One-way valves, operating automatically, were placed in the supply line to prevent the liquid in the tube connected with the pump and the nozzles from returning to the reservoir or the pump after a charge was exhausted.

What Horton considered the features constituting patentable invention were: (1) the use of pressure to force a stream into the path of the windshield wiper; (2) the location of the nozzle at a point where the direction of the stream would be the same as the direction of the airflow; and (3) the introduction of a predetermined time or amount of discharge which would turn itself off automatically and relieve the driver from doing more than setting the device in operation.

Plaintiff's expert witness Brush gave it as his opinion that "in still air" the Horton and Becker devices amount to the same thing. He said: " * * * They are practically mechanical equivalents, but what Horton did was to use the windshield wiper pivot at the bottom of the windshield [for the location of the nozzle] and discard gravity as a force to be used at all in his device, and use velocity upward for placement of the liquid. Now, that has the advantage that, as I have said several times, the induced wind velocity by road speed does not oppose or does not significantly oppose such action. Now, the wind velocity is highly variable. The force of gravity is constant, at least except in the philosophical sense. Truly, if you get on mountain tops

the force of gravity is slightly less than it is at sea level, but that is only a philosophical difference as far as we are talking about is concerned. So Horton discarded the use of the force of gravity which Becker used and in so doing he was able to get the results which both arrangements will get in still air. He was able to get those results throughout a very much wider range of speed on the road."

The idea of discharging a stream upwardly into the path of a windshield wiper did not originate with Horton nor do we think that all reasonable minds would agree that it required inventive genius to conceive the idea or the means for accomplishing it. Becker in the specifications of his patent stated that his reservoir could be "differently located, and that instead of a gravity flow and air vent, a pressure or other feed may be used if desired, the air vent [in the reservoir] then being omitted." It seems to us, as it apparently did to the plaintiff's expert Brush, that the device of Becker and that of Horton were mechanical equivalents, the main practical difference between them being that one used the force of gravity to carry liquid downward and the other a pump to force the liquid upward to its destination.

The Rawlinson British Patent No. 430,-366, of June 18, 1935, shows a device substantially similar to that disclosed in the Horton patent. It appears, however, that Horton had completed his alleged invention in the first week of May, 1935, and that therefore the Rawlinson patent may not be regarded as prior art or as anticipatory of Horton.

A British publication, called "The Autocar," of November 30, 1934, shows a device for discharging jets of liquid into the path of a windshield wiper of an automobile. The reservoir for the liquid is under the hood; the device for putting pressure on the liquid drawn from the reservoir is attached to the steering column of the car; the discharge nozzles are near the bottom of the windshield, and the liquid is forced upwardly into the path of the windshield wipers. The plaintiff contends that this foreign publication does not exhibit a full, clear, and exact showing of the device, and

may not be considered as prior art or as an anticipation of Horton; citing Wisconsin Alumni Research Foundation v. George A. Breon & Co., Inc., 8 Cir., 85 F.2d 166, 167, certiorari denied 299 U.S. 598, 57 S.Ct. 191, 81 L.Ed. 441; Baldwin-Southwark Corp. v. Coe, 76 U.S.App.D.C. 412, 133 F.2d 359, 365, 366. Nevertheless, we think the publication is sufficiently informative to be accorded some weight in ascertaining the state of the art in 1934, particularly in view of the fact that one may believe that a skilled mechanic familiar with the publication and with the prior art generally would have had no great difficulty in producing a similar device, despite the fact that exact drawings and specifications are lacking.

Italian Patent No. 321,596, which, as translated, shows that it was "granted" to Gino Finzi on October 10, 1934, discloses a windshield cleaning device, with a reservoir for the liquid under the hood, a pump to withdraw liquid from the reservoir and to discharge it, under pressure, through a discharge pipe which has two nozzles just above and two nozzles just below the windshield. The liquid is discharged into the path of the windshield wipers, which, in the drawing, are pivoted at the top of the windshield. The plaintiff contends that this is not prior art because at the bottom of the patent appear the words "Printed in August, 1935," and because of the failure of the defendants to show that the patent had become effective or available to the public prior to that time, which is subsequent to the invention date of Horton. The plaintiff asserts that a foreign patent, to be regarded as anticipation or prior art, must be shown to have been both granted and published.

■ The District Court was of the opinion that the Italian patent was not to be disregarded. According to Walker on Patents, Deller's Edition, Vol. II, § 175, page 839, a foreign patent is effective as of the date when it officially becomes a patent in the country which issues it, and in Italy the word indicating the patent date is "rilasciato," (which means "granted"). We think that, prima facie at least, the patent of Finzi became effective October 10, 1934, and that the District Court, in the absence of any evidence indicating that it was a secret patent or, for some reason, had not become effective, did not err in regarding it as prior art. In Sirocco Engineering Co. v. B. F. Sturtevant Co., 2 Cir., 220 F. 137, 143, certiorari denied 238 U.S. 636, 35 S.Ct. 939, 59 L.Ed. 1500, the court said of a foreign patent: "It is not essential to a valid patent that the description and claims should be printed. It is enough that the officials have acted upon the application and granted the patent."

■ But, regardless of the Italian patent, we think that the question whether Horton's combination involved anything more than mechanical skill was a question of fact for the District Court. The selection and arrangement of old mechanical means to accomplish a given result, such as discharging a stream of liquid from a reservoir upward upon a windshield, we think can reasonably and honestly be believed to be within the competency of a skilled mechanic familiar with the art.

It is our opinion that the conclusion reached by the District Court was, at least, a permissible one and in substantial accord with the decision of the Supreme Court in Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L. Ed. 58, and with the recent decisions of this Court in Frank Adam Electric Co. v. Colt's Patent Fire Arms Mfg. Co., 8 Cir., 148 F.2d 497; Koochook Co. Inc. v. Barrett, 8 Cir., 158 F.2d 463; Hall Laboratories, Inc. v. Economics Laboratory, Inc., 8 Cir., 169 F.2d 65; Alemite Co. v. Jiffy Lubricator Co., 8 Cir., 176 F.2d 444; and Miller v. Tilley, 8 Cir., 178 F.2d 526. It is, no doubt, true that this Court is applying higher standards than it formerly did for determining whether patented improvements of practical value and which have met with commercial success involve invention or only mechanical skill. Compare, G. H. Packwood Mfg. Co. v. St. Louis Janitor Supply Co., 8 Cir., 115 F.2d 958, with Frank Adam Electric Co. v. Colt's Patent Fire Arms Mfg. Co., supra, 148 F.2d 497. The Supreme Court has, we think, raised the standards of originality necessary to sustain patents for improvements such as

those involved in the instant cases, regardless of their usefulness or commercial success. Compare, Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523, and Temco Electric Motor Company v. Apco Manufacturing Company, 275 U.S. 319, 48 S.Ct. 170, 72 L.Ed. 298, with Cuno Engineering Corp. v. Automatic Devices Corp., supra, 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58.

The judgment appealed from is affirmed.