**LOVE TRACTOR, Inc. v. CONTINENTAL FARM EQUIPMENT CO., Inc.**
**Civ. No. 113-47.**

United States District Court
D. Nebraska, Omaha Division.
June 12, 1950.

194

Eugene C. Knoblock, of the firm of Oltsch & Knoblock, South Bend, Ind., Laurens Williams, of the firm of Young & Williams, Omaha, Neb., for plaintiff.

I. J. Farley, Sr., and Joseph W. Farley, of the firm of Farley, Forster & Farley, Detroit, Mich., Howard Kennedy, Omaha, Neb., for defendant.

DONOHOE, Chief Judge.

This is an action for infringement of Love Patent No. 2,320,624, for a disk harrow. The case was tried to the court and the court makes the following special

### Findings of Fact

1

Plaintiff, Love Tractor, Inc., a Michigan Corporation, is the owner of Letters Patent No. 2,320,624 in suit.

2

Defendant, Continental Farm Equipment Company, Inc., is a Nebraska corporation and has a regular and established place of business in this district at Omaha, Nebraska.

3

This is an action for patent infringement against a resident of this district, and this court has jurisdiction.

4

The letters patent No. 2,320,624 in suit were issued June 1, 1943, on an application filed July 7, 1941, by Jabez A. Love, president of plaintiff corporation, and discloses an agricultural soil tilling implement of the type known as a disk harrow.

5

The patented disk harrow is constructed with a rigid frame formed of longitudinal, transverse and upright members providing a forward projection, and a superstructure. The frame mounts three connectors, one at the top of the superstructure and centrally between the sides of the frame, and two at a lower level than the first and spaced apart laterally. These connectors provide for the attachment of the implement to a power operated lift hitch of three point suspension or unit mounting type which includes a pair of pulling bars attached at the lower connectors and an upper or center positioning bar attached at the upper connector.

Two or more gangs of disk blades mounted on a common axis in spaced relation, and including spaced bearings and a gang frame, are provided. Four gangs are used in the tandem form and two gangs in the single action form of harrow. Each gang is pivotally connected near its outer end to an outer end of the main frame. Each gang is further connected to the frame at a second point spaced above the first named pivot, as by a stabilizer bar which connects the main frame and the gang frame. The pivots are constructed to permit the disk gangs to tilt vertically and thus assume a normal position to the ground which the disk blades engage so that uniform penetration of the blades into the soil will occur.

The working position of the gangs in both embodiments is controlled and set by adjusting means which include links connected at the inner bearings of the gangs and extending forwardly for connection with manually controlled members carried by the part of the frame which projects forwardly, so that the manual adjustment members are located forwardly of the

points of connection between the lift hitch and the connectors.

### 6

The harrow can be lifted bodily above and clear of the ground by the tractor's lift hitch mechanism through a small upward stroke of about 18 inches. When it is elevated the disk gangs are restrained from vertical tilting or free dangling by the double vertically spaced pivot connections between the frame and the outer end of each disk gang. The adjusting means permits changes to be made in the angle at which the gangs are set relative to the direction of travel of the harrow in working, and maintains that angle as set. During lifting, the adjusting means continues to hold the gangs at the desired setting, so that, when lowered, they will resume operation at the same setting existing before they were lifted.

### 7

Various constituents of the Love Disk Harrow were in existence and patented prior to the issuance of the Love Patent No. 2,320,624. The Sharp Patent No. 485,666, the Mowry Patent No. 1,913,036, the Pollard Patent No. 1,246,462, and the Dickinson Patent No. 1,239,091, contained a rigid frame unit of rigidly interconnected transverse and longitudinal members, disk gangs each having their outer bearing and sub-frame pivotally connected to the rigid main frame, a link connected between the inner bearing of each gang and a movable adjusting lever carried by the main frame. These were more or less common elements of the old pull type harrows. None of these harrows, however, could be lifted without engaging in an independent operation; they did not contain the element of liftability which the Love harrow contains.

The element of liftability in a disk harrow is extremely important to the farmer. It permits him to transport the harrow across ground where he may have growing crops, which the harrow would otherwise damage. It permits him to cross or travel on hard roads with the harrow, without damaging either the disks or the pavement. And there are innumerable other practical advantages to a liftable type disk harrow which we need not mention here. Suffice it to say, we can clearly perceive the need which existed for the development of a disk harrow containing the element of liftability.

Ferguson's development of a lifting mechanism for Ford tractors had solved the problem of liftability for rigid type farm implements, such as the plow, cultivator and tiller, but was of little use in regard to the floatable disk harrow. Others ventured solutions to the problem of creating a liftable disk harrow. For example, White invented a lift type farm implement known as a rotary hoe which is somewhat similar to a harrow. Liftability was accomplished by lowering ordinary wheels in such a manner that the hoe disks were forced upward. Patent No. 1,134,656. But use of this lift requires that the disks be, to a certain extent, rigid. The same is true of the Johnson Patent No. 1,846, 489, and the Morkovski Patent No. 2,123,555.

### 8

Love's combination of elements in such a manner that the resulting disk harrow could be lifted and adjusted and whose gangs float to follow the contour of the ground they engage, was a distinct advance in the art. The patented harrow accomplishes its results by the conjoint and cooperative action of the parts, each taking and transmitting stresses when the harrow is lifted as well as when it is working the soil, and therefore the harrow embodies a true patentable combination of parts. None of the prior patented or published harrows cited to the court accomplished this result in a similar manner.

### 9

The Love harrow was the result of invention and not merely an aggregation within the ordinary capabilities of one skilled in the calling.

### 10

There was not sold, nor in use, over one year prior to the application for the patent in suit a disk harrow containing the inventive concepts of the patent in suit.

**11**

The patent in suit discloses the invention sufficiently clear to teach those skilled in the art how to construct an operative lift disk harrow.

**12**

The defendant has manufactured in this district and sells a single action lift disk harrow which is constructed similarly to the patented harrow, embodies the same combination and arrangement of parts as the patented harrow, accomplishes the same results as the patented harrow and in the same way, and possesses all of the advantages which characterize the patented invention.

**13**

The defendant had specific notice of the existence of plaintiff's patent and of plaintiff's charges of infringement of the patent in suit on October 20, 1946, and the plaintiff's application of notice on plaintiff's lift disk harrows constituted constructive notice to defendant of the patent in suit from a date prior to August, 1946, when defendant commenced to manufacture its lift disk harrow.

### Discussion

The main defense interposed by the defendant in this case is that the plaintiff's disk type harrow is not a patentable machine. The essential elements of patentability have been set forth by Congress in the following legislative enactment: "Any person who has invented or discovered any new and useful art, machine, manufacture, or composition of matter, or any new and useful improvements thereof, or who has invented or discovered and asexually reproduced any distinct and new variety of plant, other than a tuber-propagated plant, not known or used by others in this country, before his invention or discovery thereof, and not patented or described in any printed publication in this or any foreign country, before his invention or discovery thereof, or more than one year prior to his application, and not in public use or on sale in this country for more than one year prior to his application, unless the same is proved to have been abandoned, may, upon payment of the fees required by law, and other due proceeding had, obtain a patent therefor." 35 U.S.C. A. § 31.

The first problem arising under this statute is whether the plaintiff's disk harrow is a mere aggregation of old elements or is a true patentable machine the result of inventive genius. One of the leading cases on the doctrine of aggregation is the early case of Hailes v. Van Wormer, 20 Wall. 353, 22 L.Ed. 241, in which the court set forth this rule: "It must be conceded that a new combination, if it produces new and useful results, is patentable, though all the constituents of the combination were well known and in common use before the combination was made. But the results must be a product of combination, and not a mere aggregate of several results each the complete product of one of the combined elements. Combined results are not necessarily a novel result, nor are they an old result obtained in a new and improved manner. Merely bringing old devices into juxtaposition, and there allowing each to work out its own effect without the production of something novel, is not invention. No one by bringing together several old devices without producing a new and useful result the joint product of the elements of the combination and something more than an aggregate of old results, can acquire a right to prevent others from using the same devices, either singly or in other combinations, or, even if a new and useful result is obtained, can prevent others from using some of the devices, omitting others, in combination." 20 Wall. at page 368, 22 L.Ed. 241.

■ The plaintiff's lift disk harrow is the first harrow so constructed that it can be lifted, adjusted, and at the same time be floatable; that is to say, so that its disk blades may follow the contour of the ground. The teachings of the art previously had been that, if liftability was to be secured, then floatability had to be sacrificed. In other words, the Love disk harrow produces a new and useful result.

■ It is contended that this new result is produced by a mere aggregation and not

actually by combination of the elements used in the plaintiff's disk harrow. But with this contention we are not in accord. The test is whether the combination discloses a cooperation or a coordination of the elements which, working together as a unit, although mayhap not simultaneously, produces a new or better result. See Skinner Bros. Belting Co. v. Oil Well Improvements Co., 10 Cir., 1931, 54 F.2d 896 at page 898. The evidence indicates that at all times and under all conditions, all of the parts of the plaintiff's harrow cooperate to produce the desired result.

■ We are aware of the fact that a device to be patentable must be more than "new and useful". It must also be an "invention or discovery". This was clearly set forth by Mr. Justice Douglas in Cuno Engineering Corporation v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58, with these expostulatory remarks: "Since Hotchkiss v. Greenwood, 11 How. 248, 267, 13 L.Ed. 683, decided in 1851, it has been recognized that if an improvement is to obtain the privileged position of a patent more ingenuity must be involved than the work of a mechanic skilled in the art. Hicks v. Kelsey, 18 Wall. 670, 21 L.Ed. 852; Slawson v. Grand Street R. Co., 107 U.S. 649, 17 Otto 649, 2 S.Ct. 663, 27 L.Ed. 576; Phillips v. Detroit, 111 U.S. 604, 4 S.Ct. 580, 28 L.Ed. 532; Morris v. McMillin, 112 U.S. 244, 5 S.Ct. 218, 28 L.Ed. 702; Saranac Automatic Machine Corp. v. Wirebounds Patents Co., 282 U. S. 704, 51 S.Ct. 232, 75 L.Ed. 634; Honolulu Oil Corp. v. Halliburton, 306 U.S. 550, 59 S.Ct. 662, 83 L.Ed. 980. 'Perfection of workmanship, however much it may increase the convenience, extend the use, or diminish expense, is not patentable.' Reckendorfer v. Faver, 92 U.S. 347, 2 Otto 347, 356, 357, 23 L.Ed. 719. The principle of the Hotchkiss case applies to the adaption or combination of old or well known devices for new uses. Phillips v. Detroit, supra; Concrete Appliances Co., v. Gomery, supra, [269 U.S. 177, 46 S.Ct. 42, 70 L.Ed. 222]; Powers-Kennedy Contracting Corp. v. Concrete Mixing & Conveying Co., supra, [282 U.S. 175, 51 S.Ct. 95, 75 L.Ed. 278]; Electric Cable Joint Co. v. Brooklyn Edison Co., 292 U.S. 69, 54 S.Ct. 586, 78 L.Ed. 1131; Altoona Publix Theatres v. American Tri-Ergon Corp., supra, [294 U.S. 477, 55 S.Ct. 455, 79 L. Ed. 1005]; Textile Machine Works v. Louis Hirsch Textile Machines Inc., 302 U.S. 490, 58 S.Ct. 291, 82 L.Ed. 382; Toledo Pressed Steel Co. v. Standard Parts Inc., 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed. 1334. That is to say the new device however useful it may be, must reveal the flash of creative genius not merely the skill of the calling. If it fails, it has not established its right to a private grant on the public domain." 314 U.S. at page 90, 62 S.Ct. at page 40, 86 L.Ed. 58.

Though some courts do not consider that this language of Justice Douglas altered the standards required for determination of "invention" within the meaning of the statute cf. In re Shortell, 142 F.2d 292, 31 C. C.P.A., Patents, 1062, we recognize that our own circuit has adopted the position that higher standards should now be applied in determining whether patented improvements involve "invention" or merely mechanical skill. In Tico Products Corp. v. Delman Corporation, 8 Cir., 180 F.2d 529, 533, Judge Sanborn pointed out: "The Supreme Court has, we think, raised the standards of originality necessary to sustain patents for improvements such as those involved in the instant cases, regardless of their usefulness or commerical success. Compare, Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 43 S. Ct. 322, 67 L.Ed. 523, and Temco Electric Motor Company v. Apco Manufacturing Company, 275 U.S. 319, 48 S.Ct. 170, 72 L.Ed. 298; with Cuno Engineering Corp. v. Automatic Devices Corp., supra, 314 U. S. 84, 62 S.Ct. 37, 86 L.Ed. 58."

■■ The immediate problem for us to decide is whether the plaintiff's device, the disk harrow in suit, has met this increased requirement of originality. After a thorough examination of the evidence we find that it has. The mere fact that all the elements of a machine are old does not prevent their present combination from becoming a patentable device. Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U.S. 301, 29 S.Ct. 495, 53 L.Ed. 805. The

question turns upon the originality of the new combination. If the selection and arrangement of the old mechanical means in the Love lift Disk harrow were reasonably and honestly within the competency of a skilled mechanic familiar with the art, then the device is not patentable. However, if the combination is something more than could ordinarily be accomplished by one skilled in the calling, then it is the result of a flash of creative genius, and as such, is properly patentable. See Tico Products Corporation v. Delman Corporation, supra.

■ Mr. Parker, an expert on the subject of patents, and a man familiar with the various elements of the Love harrow as they existed in prior patents testified that *more* than mere mechanical skill would be required to build the Love lift disk harrow from the known and existing elements considered at the trial. It is true that the defendant introduced Mr. Brush, who testified that anyone who wanted to do so could have constructed a Love harrow from knowledge of the various constructions of the prior patented harrows. But this testimony must be considered in the light of two factors. First, the witness became familiar with the lift disk harrow only three or four months before he testified; consequently was not familiar with the problems confronting disk harrows and lift type farm implements which existed at the time the Love invention was made. Secondly, the comment was made after the witness had familiarized himself with the Love harrow. Viewed after the event, the means adopted seem simple, but this is not enough to negative invention. Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 321 U.S. 275, 279, 64 S.Ct. 593, 88 L.Ed. 721. Many things seem obvious after they have been done, and in the light of accomplished result, "it is often a matter of wonder how they so long 'eluded the search of the discoverer and set at defiance the speculations of inventive genius.'" Diamond Rubber Co. of New York v. Consolidated Rubber Tire Co., 220 U.S. 428, 435, 31 S.Ct. 444, 447, 55 L.Ed. 527; Potts v. Creager, 155 U.S. 597, 608, 15 S.Ct. 194, 39 L.Ed. 275

Other evidence which further verifies the fact that the Love disk harrow was patentable is that given by Mr. Hammons, who testified that despite a lifetime of familiarity with farm implements, when he first saw the Love lift disk harrow he did not believe it was a practical tool, and caused extensive tests to be made to satisfy himself that it was practical. Then, Mr. Love testified concerning the reluctance of other dealers to approve or purchase his patented harrow when it was first introduced. Would this seem to indicate that the invention was obvious to those skilled in the art? We think not.

■ There are other factors, which, though not in themselves controlling, give weight to the conclusion that the device was patentable. Commercial success, the verdict of the ultimate consumer, was given consideration. Wahl Clipper Corporation v. Andis Clipper Co., 7 Cir., 1933, 66 F.2d 162. Novelty, utility, imitation by those skilled in the art, and the practical satisfaction of a need long before recognized, but unfulfilled, is some indication of the inventive thought required to produce the lift harrow in question. Schering Corporation v. Gilbert, 2 Cir., 1946, 153 F.2d 428. With all of these factors in mind, and after a very meticulous examination of the evidence produced at the trial, the court is of the opinion that the Love disk harrow, Patent No. 2,320,624, is the result of inventive genius and not within the ordinary productive capacity of one skilled in the calling.

■ The defendant has introduced depositions to prove that the disk harrow in question was not patentable because of its alleged prior use. Generally, the burden is on the defendant to sustain such a defense beyond a reasonable doubt. Radio Corporation v. Radio Laboratories, 293 U.S. 1, 55 S.Ct. 928, 79 L.Ed. 163. The reason for this strict requirement was eloquently stated by Mr. Justice Brown in the Barbed Wire Patent Case, 143 U.S. 275, 12 S.Ct. 443, 36 L.Ed. 154, in this manner: "We have now to deal with certain unpatented devices, claimed to be complete anticipations of this patent, the existence and use of which are proven only by oral

testimony. In view of the unsatisfactory character of such testimony, arising from the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party calling them would have them recollect them, aside from the temptation to actual perjury, courts have not only imposed upon defendants the burden of proving such devices, but have required that the proof shall be clear, satisfactory, and beyond a reasonable doubt. Witnesses whose memories are prodded by the eagerness of interested parties to elicit testimony favorable to themselves are not usually to be depended upon for accurate information. The very fact, which courts as well as the public have not failed to recognize, that almost every important patent, from the cotton gin of Whitney to the one under consideration, has been attacked by the testimony of witnesses who imagined they had made similar discoveries long before the patentee had claimed to have invented his device, has tended to throw a certain amount of discredit upon all that class of evidence, and to demand that it be subjected to the closest scrutiny. Indeed, the frequency with which testimony is tortured, or fabricated outright, to build up the defense of a prior use of the thing patented, goes far to justify the popular impression that the inventor may be treated as the lawful prey of the infringer." 143 U.S. at page 284, 12 S.Ct. at page 447.

█ In the instant case the court is not persuaded by the defendant's depositions and concludes that the defendant has not sustained the burden of its defense. The Fresno and Anaheim depositions relate to harrows which lack the element of adjustability. The Abbeville harrow is not floatable. And finally, since these depositions, as well as the Ypsilanti depositions, are not sufficiently convincing to show a prior use of a disk harrow containing the features of liftability, adjustability and floatability, the defense of alleged prior use must necessarily fail.

The defendant points out that nowhere in the Love Patent does the word "floatability" appear. It is true that floatability is not expressed as such but results from the pivotal connection of each disk gang with the rigid frame in association with the means for adjusting the setting of the gangs. Specifically, floatability results from the relationship of the disk gangs to the rigid frame provided, with respect to the outer ends of the disk gangs for the single action harrow, by the pivot means 93,-94 acting in association with the pivot means 83,84 spaced therebelow and accommodated further by the adjusting means at the inner end of the disk gang in the nature of the links 89 pivoted at 90 to the member 75, and at 89,91 to the inner disk gang bearing. In each claim there has been a clear cut definition of the combination and arrangement of the parts which provide within the patented disk harrow the advantages of liftability, adjustability and floatability.

█ The last question presented for our consideration is whether the defendant's lift disk harrow is an infringement upon the Love patented disk harrow. It is well settled that the infringing harrow need not copy the patented device in every detail. Such a requirement would frustrate the protective potency of the patent laws for the skillful counterfeiter could make inconsequential changes in the patented device, which though adding nothing, would take his imitation beyond the reach of the law. It was in response to this possibility that the doctrine of equivalents arose. The essence of the doctrine is that one may not practice a fraud upon a patent. See Grover Tank & Mfg. Co. v. Linde Air Product Co., 70 S.Ct. 854, in which Mr. Justice Jackson reiterates the doctrine in this fashion: " 'To temper unsparing logic and prevent an infringer 'from stealing the benefit of the invention' a patentee may invoke this doctrine to proceed against the producer of a device 'if it performs substantially the same function in substantially the same way to obtain the same result.' Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 42, 50 S.Ct. 9, 74 L.Ed. 147. * * * The doctrine operates not only in favor of the patentee of a pioneer or primary invention, but also for the patentee of a secondary invention consisting of a combination of old ingredi-

ents which produce new and useful results, Imhaeuser v. Buerk, 101 U.S. 647, 655, 25 L.Ed. 945, although the area of equivalence may vary under the circumstances. See Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 414-415, 28 S.Ct. 748, 749, 52 L.Ed. 1122 and cases cited."

There can be little doubt that the defendant's harrow is an infringement upon the plaintiff's patent. The evidence adduced at the trial clearly shows that the defendant's harrow performs substantially the same function as the patented harrow, in substantially the same way and accomplished substantially the same results.

In view of the foregoing conclusions the plaintiff is entitled to the following relief:

1. The dismissal of the defendant's counterclaim.

2. A permanent injunction restraining the defendant from manufacturing and selling its single action lift disk harrow which is held in this case to infringe the plaintiff's patent.

3. Recovery of damages for infringement of its patent by defendant's harrow.

The court will retain jurisdiction for a trial and judgment pertaining to the matter of damages upon appropriate pleadings with reference thereto.

The attorney for the plaintiff will prepare and submit the proper orders and judgment in keeping with this memorandum.