**The SUN RUBBER COMPANY,**
Plaintiff,

v.

**NATIONAL LATEX PRODUCTS COMPANY, Harry R. Gill, Sr. and Harry R. Gill, Jr., Defendants.**

**Civ. A. No. 31211.**

United States District Court
N. D. Ohio, E. D.
Feb. 19, 1957.

Ely, Frye & Hamilton, Akron, Ohio, for plaintiff.

McCoy, Greene & TeGrotenhuis, Cleveland, Ohio, for defendants.

WEICK, District Judge.

In this action, the defendants are charged with infringing two patents owned by plaintiff.

The patents in suit are the "Molitor" patent, United States Patent No. 2,629,-134, which relates to a process for molding hollow plastic articles such as dolls, toys, etc. using a "vinyl" type of liquid plastisol and the "Martin & Rekettye" patent, United States Patent No. 2,629,-131, which embodies a design of a machine to carry out the process.

■ Defendants have moved for summary judgment dismissing plaintiff's complaint as to Patent No. 2,629,134 on the ground that it is invalid under the provisions of 35 U.S.C.A. § 102(b) because the invention described therein was patented in Italy more than one year prior to the date of the application for the patent in the United States.

Two questions are in dispute between the parties, namely, the effective date of the Italian patent, and whether the specifications and claims of said patent contain the invention of the Molitor patent.

The first question is solely one of law, as there was no genuine issue of fact concerning it.

35 U.S.C.A. § 102(b), provides that a person shall be entitled to a patent unless:

"(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, * * * *".

The application for the Molitor patent was filed in the Patent Office on June 27, 1950 and the patent was issued February 24, 1953.

The Italian patent No. 937,174 was applied for by Claude Delacoste and Yves Cornic on December 11, 1947.

The Delacoste patent was granted October 9, 1948 and was effective for 15 years after the filing date.

Defendants claim that October 9, 1948 is the date when the Delacoste invention was patented within the meaning of the statute hereinbefore set forth.

Plaintiff contends that, within the meaning of this statute, the Delacoste invention was not patented until July 27, 1949, which was the date when the patent was printed. If the latter date controls, the statute would not apply.

The Delacoste patent was not open to public inspection until January 9, 1949. It was not distributed in Italy or elsewhere until after January 21, 1950. It was not received by the United States Patent Office until February 9, 1951.

There can be no question that the Delacoste patent was effective in Italy on the date it was granted.

In Trico Products Corp. v. Delman Corp., D.C., 85 F.Supp. 393, 394 the court said:

"Plaintiff claims this Italian patent had to be actually published prior to Horton to be effective, but I am not impressed with that argument."

The Court of Appeals affirmed the judgment in 8 Cir., 180 F.2d 529.

To the same effect are Sirocco Engineering Co. v. B. F. Sturtevant Co., 2 Cir., 220 F. 137, certiorari denied 238 U.S. 636, 35 S.Ct. 939, 59 L.Ed. 1500; General Electric Co. v. Hygrade Sylvania Corp., D.C., 61 F.Supp. 476; Ex parte Scalera, 104 U.S.P.Q. 75, 76; Walker on Patents, Deller's Edition, Vol. 2 § 175.

In Carter Products, Inc., v. Colgate-Palmolive Co., D.C., 130 F.Supp. 557, the court held that a Belgian patent became operative when it was first disclosed to the public under the procedures of the Belgian Patent Office. On appeal, 4 Cir., 230 F.2d 855, the Court of Appeals did not pass upon the question as the court held that the Belgian patent did not anticipate the patent in suit.

It seems clear that Delacoste's invention was patented on October 9, 1948

within the meaning of the statute. The "printing" of the patent is another matter. In any event, the Italian patent was open to public inspection on January 9, 1949, which was more than one year prior to the filing of Molitor's application for patent.

■ The second question presented is whether the Delacoste patent embodied Molitor's invention.

As to this matter, the parties are in violent disagreement.

Plaintiff submitted the affidavit of Robert C. Sessions, a consulting engineer, who analyzed both patents, and swore positively that, in important particulars, Molitor does not embody Delacoste's invention.

Plaintiff claims that there is presented thereby a genuine issue of fact making it improper for the Court to grant a summary judgment. W. E. Plechaty Co. v. Heckett Engineering, Inc., D.C.N.D.Ohio 1956, 145 F.Supp. 805.

A comparison of Delacoste with Molitor shows a striking similarity in some of the basic elements of the patents.

The principal dispute between the parties concerns the method of heating the plastisol after it has been placed in the mold and cooling the mold after fusion takes place.

Molitor provides for heating in two steps. First, until the plastisol "gels", and then heating the "gel" within specified temperatures, until fusion takes place.

Plaintiff claims that Delacoste describes the first step, but not the second, and that the product in its "gelled" state is not a useful product because of its crumbly nature, low tensile strength and low tear resistance.

Defendants claim that Delacoste describes both steps in a single operation, i. e., by heating until the plastisol hardens which would involve further heating after the plastisol "gelled".

Molitor teaches a cooling operation for the mold after fusion takes place. Delacoste does not.

Defendants claim that cooling is implicit in the mechanical operation of the mold and need not be specifically described.

The "Session" affidavit further states that Delacoste is so indefinite, vague and incomplete that a person having ordinary skill in the art could not learn and follow Molitor from Delacoste.

The evidence submitted is conflicting. The Court, in this case, cannot determine wherein the greater probability of the truth lies simply by an examination of the papers.

The disputed facts as to the process of each patent will have to be found from the evidence after the case has been fully tried, argued and briefed.

Under these circumstances, the Court would not be justified in attempting to determine the factual issues as to the process summarily.

The motion for summary judgment will, therefore, be denied.